RADER v. STAR MILL & ELEVATOR CO. et al.

PATTON v. SAME.

In re GAGE ROLLER MILLS.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1919.)

Nos. 5286, 5291.

1. JUDGMENT ⬿678(1)—CONCLUSIVENESS—DECREE ESTABLISHING LIEN—EFFECT AS TO TRUSTEE IN BANKRUPTCY—ESTOPPEL.

A decree against a corporation, which was subsequently adjudicated a bankrupt, establishing and foreclosing a vendor's lien on real estate, estops the bankrupt, its trustee, and general creditors from asserting or maintaining, not only every matter offered, but also every admissible matter that might have been offered, in the foreclosure suit to defeat the plaintiff's claim.

2. BANKRUPTCY ⬿198—LIENS—LIENS DISSOLVED BY BANKRUPTCY.

A vendor's lien on property of a bankrupt, although established by a decree rendered within four months prior to the bankruptcy, is not one obtained through legal proceedings, and is not defeated by Bankruptcy Act 1898, § 67 (Comp. St. § 9651).

3. ESTOPPEL ⬿98(1)—ACTS OF CORPORATION—ESTOPPEL OF STOCKHOLDERS.

A stockholder of a corporation, who held a valid vendor's lien on its real estate, held not estopped by the fact that he was a stockholder from asserting such lien as against a void mortgage, which the corporation attempted to make without his knowledge.

4. MORTGAGES ⬿151(6)—VENDOR'S LIEN—RIGHTS AS AGAINST THIRD PARTIES.

Under Rev. Laws Okl. 1910, § 3847, giving a vendor's lien for unpaid purchase money subject to the rights of purchasers and incumbrancers in good faith, the lien of a vendor to a corporation held not displaced by an agreement by the corporation, made before it obtained the deed and without the vendor's knowledge, to give a mortgage to another, who did not know nor inquire as to the condition of the title.

5. LIENS ⬿22—ABANDONMENT OF LIEN—EVIDENCE TO ESTABLISH.

The legal presumption is that one who has a legal and equitable lien on property intends to maintain and enforce it, and his abandonment thereof may not be adjudged without clear and convincing evidence of his intention to abandon.

6. ESTOPPEL ⬿52—EQUITABLE ESTOPPEL—ESSENTIAL ELEMENTS.

Two of the indispensable elements of an estoppel in pais are that (1) the party claiming estoppel relied upon the action of the party estopped, and was thereby induced to change his position or course, and that (2) he has been or will be injured on account of that change, if the party estopped is permitted to pursue the course or have the relief he seeks.

7. BANKRUPTCY ⬿184(1)—LIEN—LACHES.

A creditor of a bankrupt, holding a void mortgage on property, but which during more than a year, and while debts to other creditors were accruing, took no steps to reform its mortgage or assert a lien, held not entitled to a lien as against general creditors.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

In the matter of the Gage Roller Mills, bankrupt; H. W. Patton, trustee. From an order denying a lien, G. M. Rader appeals; and from an order establishing a lien in favor of the Star Mill & Elevator Company, the trustee appeals. Reversed on both appeals.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank B. Burford, of Oklahoma City, Okl. (Burford, Robertson, Hoffman & Burford, of Oklahoma City, Okl., and H. L. Adkins, of Higgins, Tex., on the brief), for appellant Rader.

E. L. Foulke, of Wichita, Kan. (J. D. Wall, of Wichita, Kan., on the brief), for appellant Patton.

C. B. Leedy, of Arnett, Okl., for Star Mill & Elevator Co.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. The Gage Roller Mills, a corporation, was adjudged a bankrupt on June 15, 1915, upon an involuntary petition against it filed on May 15, 1915. On May 15, 1915, it owned real estate upon the undivided three-fourths of which G. M. Rader claimed a vendor's lien for unpaid purchase money, which he insisted attached to it on August 4, 1913. On December 19, 1914, he had brought a suit against the Roller Mills for a foreclosure of this lien and a sale of the real estate to pay it in the district court of Ellis county, Okl., and on March 6, 1915, that court had rendered a decree in that suit, of the subject-matter of and the parties to which it had jurisdiction, to the effect that the Roller Mills was indebted to him and that he should recover from it $6,273.35, that this was the unpaid balance of the purchase money due him for this land, which the Roller Mills had bought of him and Elden Carper, that he had a vendor's lien for this purchase money from August 4, 1913, upon the undivided three-fourths of this land, which he owned and sold to the Roller Mills on August 4, 1913, that this lien be foreclosed, and that this undivided three-fourths of this land be sold and its proceeds applied to the payment of this lien.

Between October and December 1, 1913, the Star Mill & Elevator Company, a corporation, loaned to the Roller Mills $10,000, and on November 3, 1913, R. T. Harvey, the president of the Roller Mills, made, signed, and acknowledged, as president thereof, a mortgage upon this real estate in the name of that corporation as mortgagor to the Star Company to secure the payment of this loan, and this mortgage was recorded in the office of the register of deeds on December 11, 1913. This mortgage was not attested by the signature of the secretary of the corporation, or by its seal, as required by section 1187 of the Revised Laws of Oklahoma, and was void.

Mr. Rader presented to the bankruptcy court his claim for the allowance and enforcement of his vendor's lien upon the undivided three-fourths of the land for the amount of his decree of foreclosure. Mr. H. W. Patton, the trustee in bankruptcy of the estate of the Roller Mills, filed objections to any such relief. The Star Company presented to and filed with the bankruptcy court a claim and application for the allowance to it of a secured claim and first lien upon the land of the Roller Mills Company for the sum of $6,264.35 and interest, based on its loan and mortgage. To this claim the trustee filed objections. Pursuant to stipulations of the parties this real estate was sold by order of the bankruptcy court for $5,000, and the respective

liens and claims of the parties were transferred from the real estate to the proceeds thereof.

The respective claims of the parties were tried out before the referee and he decided: (1) That Rader had a prior and superior vendor's lien for $6,385.35 on three-fourths of the $5,000 proceeds of the sale of the lands; and (2) that the Star Company had no lien upon any of the proceeds of the land, but was entitled to the allowance of a general unsecured claim. Upon a review of these conclusions the court below adjudged that the Star Company held the superior lien upon the $5,000, and that G. M. Rader held a second and inferior lien thereon. Rader and the trustee appealed from this decree.

[1] Counsel for the trustee presented many objections to the allowance against him and the unsecured creditors he represents of the vendor's lien of Rader. But an examination of them discloses the fact that they rest upon acts or omissions prior to March 6, 1915, when the final decree of the state court, in the suit of Rader against the Roller Mills, that the lien Rader claimed was valid, that it attached on August 4, 1913, that it be foreclosed, and that three-fourths of the land be sold to pay it, was rendered. If any of these objections ever were tenable, they are not available to the trustee now, because they arose before that decree, and might have been pleaded and tried in that suit, and, as against Rader, that decree estops the Roller Mills, the trustee, and the general creditors he represents, who stand in the shoes of the Roller Mills, from asserting or maintaining, not only every matter offered, but also every admissible matter that might have been offered, in the foreclosure suit to sustain or defeat Rader's claim. Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Board of Commissioners v. Platt, 79 Fed. 567, 571, 572, 25 C. C. A. 87.

[2] The trustee took his interest in the property subject to the final decree against the Roller Mills, and he has no rights or equities against Rader superior to those which the bankrupt had when the petition in bankruptcy was filed, about two months after the final decree of foreclosure. Rader's lien was not obtained through legal proceedings, and consequently was not defeated by section 67 of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 564 [Comp. St. § 9651]), although the final decree was rendered within four months preceding the filing of the petition in bankruptcy. Farrell et al. v. Wysong et al., 246 Fed. 281, 282, 283, 159 C. C. A. 11; Hurley v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 132, 133, 29 Sup. Ct. 466, 53 L. Ed. 729. The trustee and the unsecured creditors he represents are therefore entitled to no relief against the decree of the court below sustaining the vendor's lien of Rader against them.

[3] But the Star Mill & Elevator Company, which was not estopped by the foreclosure decree, made the claim, which the referee denied, and the court below allowed, that it had a subsequent lien by virtue of its loan of $10,000 to the Roller Mills in October and November, 1913, which was superior in equity to Rader's vendor's lien. That court based its decision upon two propositions: First, that although the mortgage to the Star Company was void, and created no lien upon the property, by reason of the failure of the mortgagor

corporation to attest it by the signature of its secretary and its corporate seal (1 Revised Laws of Oklahoma, § 1187), and the decisions of the Supreme Court of Oklahoma (Craggs v. Earls, 8 Okl. 462, 465, 58 Pac. 637; Randall v. Glendenning, 19 Okl. 480, 481, 92 Pac. 158), which upon this question of the construction and effect of that state's statutes are controlling in the federal courts, and although the proved fact was that Rader had no notice of the loan by the Star Company, or of the attempt to make the mortgage or give the equitable lien to the Star Company which it claims, until after that company had paid out the entire $10,000, yet merely because Rader was a stockholder in the Roller Mills for something less than $4,000, and the president of that corporation signed its name to and acknowledged the execution of the void mortgage, and the corporation received the $10,000, and Rader presumptively shared in the benefits of it, though without the knowledge of it, he was estopped from maintaining that his vendor's lien was superior in equity to the alleged equitable lien of the Star Company; and second, that, conceding the invalidity of the mortgage, there was at least an agreement between the manager of the Roller Mills and its board of directors, on the one hand, and the Star Company, on the other, that the former should make a mortgage on the real estate to secure the loan of the $10,000, and equity will treat that as done which should have been done, and will enforce the lien of the mortgage it thus treats as made against all but innocent parties, and that therefore it will enforce it against Rader.

To the first proposition no authority has been cited or discovered, no persuasive reason has been given and none has been found for the position that one who has, as Rader had, an established equitable and legal lien upon the real estate of a corporation in which he is a stockholder, is, by the mere fact that he is such stockholder, deprived of that lien, and estopped from enforcing it by the subsequent attempt to make or the subsequent making by the corporation, without his knowledge, of either a legal or equitable lien upon that property. The general rule is that an officer of a corporation, though he be a stockholder, does not, by waiver, estoppel, or otherwise, deprive himself of or injuriously affect his individual claims against it or his individual liens upon its property by his acts on behalf of the corporation as its officer. "An act done in a representative capacity will not estop one in his individual capacity." 16 Cyc. 780. Much less will the illegal or ineffective acts of such officer on behalf of a corporation estop a mere stockholder thereof, who has no notice of them until after third parties have acted upon them, from enforcing against the latter his just, equitable, and legal claims, or deprive him of the benefits thereof.

Again, the estoppel of a mere stockholder by the acts of his corporation may not extend beyond the estoppel of the corporation, and if the Roller Mills was not, by the agreement to make the mortgage and the abortive attempt to do so, estopped from performing its duty to pay its prior debt to Rader, and to respect and abide by Rader's equitable lien until it paid that debt, then Rader is not estopped from enforcing that debt and lien.

[4] As to the second proposition of the court below, conceding that the board of directors of the Roller Mills orally agreed that that corporation should make a mortgage to the Star Company to secure the $10,000, and that equity will treat that as done which ought to have been done, does it follow that, in view of the principles and rules of equity jurisprudence, a mortgage or equitable lien ought to have been imposed upon this real estate for $10,000, subsequent in time, but superior in equity, to the prior lien of Rader, without notice to him, and without opportunity to enforce his lien?

Rader owned an undivided three-fourths of this property. He sold his interest in it to the Roller Mills for a purchase price of about $10,000, of which a balance amounting, with interest, to more than $6,000 has always remained unpaid. He delivered possession about August 4, 1913, and executed a deed of his interest, which he did not deliver until about January 15, 1914. The Star Company knew in August, 1913, that the Roller Mills purchased this property of Rader and Carper, and that the Roller Mills owed more than this $10,000. The Star Company made an oral agreement with the manager of the Roller Mills to advance to it $10,000 to purchase wheat on drafts upon it, secured by accompanying invoices of the wheat bought, that this wheat should be stored by the Roller Mills, that the two corporations should share in the profits of the transaction, and that the Roller Mills should give a real estate mortgage to secure the advances. But these advances or this loan of the $10,000 was induced by and made in reliance, not upon the expected real estate mortgage, but upon the wheat and the invoices thereof. Mr. Hyberger, the secretary and treasurer of the Star Company, after describing the agreement to advance on the drafts and invoices, testified that that was the way the Star Company had transacted Mr. Rader's and Mr. Carper's business for years before, that he was dealing with the same Carper, that that arrangement was satisfactory. Asked, "Now since that arrangement was satisfactorily explained, why did you require a mortgage on this property?" he answered, "Because he offered it together with a mortgage on the three plants they owned, Higgins, Shattuck, and La Verne." Asked, "Not knowing Mr. Tillotson, do you think you would have advanced this money without the mortgage?" he answered, "Yes, sir; on a storage proposition, particularly when the invoices were sent." Asked, "It does not make any difference to you, so long as you got the invoices, whether you had the real estate mortgage or not?" he answered, "No, sir."

All the Star Company's advances were made before December 1, 1913. The void mortgage was made November 3, 1913. The Star Company did not inquire whether or not the Roller Mills had any title to the real estate described in the mortgage, or any deed to it, and it had no notice or knowledge of Rader's lien until after it had advanced its money, except such notice as the law charges it with on account of the facts heretofore stated. Rader had no notice or knowledge of the negotiations or agreements about the $10,000 loan or the void mortgage until after the Star Company had advanced the $10,000. Section 3847, 1 Revised Laws of Oklahoma 1910, provides that:

"One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers in good faith, without notice."

The Star Company was not a purchaser, and because its alleged mortgage was void it was not an incumbrancer. If this statute had not been enacted, Rader would nevertheless have had an equitable lien for the unpaid purchase price of this real estate, and by virtue of this statute he had a legal lien thereon from August 4, 1913. It is true that in furtherance of justice equity sometimes treats that as done which should have been done; but it is difficult to perceive why the void mortgage of the Star Company ought to be transformed into a valid one, or why its lack of lien ought to be changed into a lien superior to the prior equitable and legal lien of Rader, to the destruction thereof, or how a more just or equitable result would be secured in that way.

In the absence of the affirmative action of a court of equity, Rader's vendor's lien is prior and superior, both at law and in equity, to the claim of the Star Company. In truth, the Star Company is here appealing to this court of equity to strike down this equitable and legal lien of Rader and to supersede it with its own claim. If the equities of these parties were equal, Rader's legal lien would prevail, for where equities are equal the law prevails. But they are not equal. Rader had not delivered his deed, and he neither knew of the negotiations for the purchase of the wheat or the contemplated making of the mortgage, nor had he notice of any facts calling upon him for any inquiry upon that subject, until after the Star Company had advanced all its money and the legal and equitable rights of the parties had become fixed. He was secure in his lien until he delivered his deed without the statute, and the statute secured his lien to him notwithstanding his delivery of the possession. When the Star Company had paid over all its money, he had done nothing and omitted nothing in violation of his duty to it, and "a court of equity can act only on the conscience of a party. If he has done nothing that taints it, no demand can attach upon it so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 177, 209, 210, 9 L. Ed. 388; Steinbeck v. Bon Homme Mining Co., 152 Fed. 333, 339, 81 C. C. A. 441.

On the other hand, while the Star Company did not know that Rader had his vendor's lien on this real estate until after it had advanced its $10,000, yet knowledge of facts and circumstances which would put a person of ordinary prudence and intelligence on inquiry is, in the eyes of the law equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose.

"Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient knowledge to lead him to a fact, he shall be deemed conversant with it." Kennedy v. Green, 3 Mylne & Keen, 266; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Swift v. Smith, 79 Fed. 709, 713, 25 C. C. A. 154.

In August, 1913, the Star Company was about to loan to the Roller Mills $10,000, and to take a mortgage on this real estate to secure

it, and it paid over the money on this loan before December 1, 1913. In August, 1913, it knew that the Roller Mills had recently bought this real estate of Rader and Carper, and that it was indebted to one or more parties to the amount of more than $10,000. The statutes of Oklahoma, of which it must take notice, informed it that, if any part of the purchase money of that property was unpaid, Rader and Carper had vendors' liens thereon therefor, and that a mortgage of a corporation, which was not attested by the signature of its secretary and its corporate seal, was void. It is incredible that these facts and circumstances would not have put a person of ordinary prudence and diligence, in the Star Company's situation, upon inquiry as to the payment of the purchase money of this property to Rader and Carper, as to the delivery of the deed from Rader to the Roller Mills, and as to the attestation of the mortgage, and such an inquiry would inevitably have disclosed to the Star Company, before it made its advances, the vendor's lien of Rader, the fact that his deed had never been delivered, the absence of title to the property in the Roller Mills, and the invalidity of the mortgage tendered to the Star Company, and would have resulted in the proper execution of another mortgage, or an immediate suit in equity to reform the void mortgage, or to establish and enforce an equitable lien. The Star Company was not induced to make its advances by, nor did it rely upon, this mortgage, but it relied, as security for its loan, upon the wheat bought, so it made no inquiry about the vendor's lien or the title to the property until after it invested its money. In December, 1914, Rader brought his suit to foreclose his vendor's lien, and the Star Company then knew he claimed it. That suit went to decree of foreclosure in March, 1915. But, while the Star Company asked for a foreclosure of its void mortgage, never at any time before the title to this real estate passed to the trustee in bankruptcy did it bring any suit or pray any court either to reform that mortgage, to enforce its claimed agreement for a mortgage, to treat its agreement for a mortgage as performed, or to enforce any other lien than what it claimed to be the legal lien of the void mortgage.

Nothing but conscience, good faith, and reasonable diligence will move a court of chancery to effective action, and because the alleged equity of the Star Company and its diligence, or rather its lack of diligence, appeal to the conscience less strongly than the equity and diligence of Rader, which are buttressed by his statutory lien and his prompt decree of foreclosure, the priority in time and the superiority in equity of that lien over the claimed lien and equity of the Star Company ought not to be avoided, but should be and must be sustained.

[5] Before reaching this conclusion the claims and arguments of counsel for the Star Company that Rader abandoned, waived, and is estopped from maintaining his lien against that company (a) because he, as a stockholder of the Roller Mills, must have received a share of the benefits to that corporation of the $10,000 loan; (b) because he delivered his deed to the Roller Mills in January, 1914, without giving any notice to the Star Company of his vendor's lien; (c) because he became in January, 1914, the manager of the Roller

Mills, and continued so to be until July, 1914; and (d) because on September 9, 1914, he, as a stockholder of the Roller Mills, voted to authorize its officers to sell its property to pay its debts, have been considered. But the legal presumption is that one who has a legal and equitable lien on property intends to maintain and enforce it, and his abandonment thereof may not be adjudged without clear and convincing evidence of his intention to abandon, and there is no evidence in this case of any such intention by Rader. Waiver is but another name for estoppel, and where there is no estoppel there is no waiver.

[6] Two of the indispensable elements of an estoppel en pais, and there was no other estoppel here, are that (1) the party claiming the estoppel relied upon the action of the party estopped and was thereby induced to change his position or course; and that (2) he has been or will be injured on account of that change, if the party estopped is permitted to pursue the course or have the relief he seeks. Neither of these elements exists in the case at bar, and Rader never waived his lien, nor is he estopped from enforcing it. He is entitled to a decree that he has the first lien—a lien superior to that of the Star Mill & Elevator Company, the trustee, and the unsecured creditors—on the undivided three-fourths of the proceeds of the sale of the real estate in question.

[7] A single question remains. Is the Star Company entitled to the allowance and enforcement of a preferred claim on the proceeds of the sale of the real estate subject to the superior lien of Rader as against the trustee and the unsecured creditors he represents? Because the void mortgage to the Star Company created no such lien, and its record gave no notice of such a lien to the creditors before the bankruptcy, and while the debts to them were accruing; because, before the bankruptcy, the Star Company brought no suit and asked no decree for the reformation of its void mortgage, or for the enforcement of an equitable lien or claim upon any of the property of the bankrupt, on the ground that the Roller Mills had made an agreement to give it a mortgage, and it had advanced the consideration—this question must be answered in the negative. Foerster v. Citizens' Savings & Trust Co., 186 Fed. 1, 3, 4, 5, 108 C. C. A. 267; Davis v. Harlow, 130 Md. 165, 100 Atl. 102, 104; Potter Mfg. Co. v. Arthur, 220 Fed. 843, 844, 136 C. C. A. 589, Ann. Cas. 1916A, 1268.

The decree of the court below must therefore be reversed, with costs against the Star Mill & Elevator Company, and the trustee. This case must be remanded to the court below, with directions to enter a decree allowing G. M. Rader the first lien on three-fourths of the proceeds of the real estate, less the necessary costs of administration chargeable to it, and allowing the claim of the Star Mill & Elevator Company as an unsecured claim, but disallowing its claim for any lien upon any of the proceeds of the real estate or for any preferential payment therefrom.

It is so ordered.