**In re Johnny Lee SPENCER, Debtor.**

**Bankruptcy No. 90–03431–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Feb. 14, 1992.

**508**

Kenneth Todd, Tulsa, Okl., for debtor.

## ORDER GRANTING DEBTOR'S MOTION TO CONVERT TO CHAPTER 13 ON CONDITIONS

MICKEY DAN WILSON, Bankruptcy Judge.

On February 14, 1992, there came on for hearing debtor's motion to convert this case from Chapter 7 to Chapter 13, and the Chapter 7 Trustee's objection thereto. Upon consideration thereof, of evidence introduced and received, of statements and arguments of counsel, and of the record herein and in related adversary proceedings, the Court, pursuant to F.R.B.P. 9014 and 7052, finds, concludes, and orders as follows.

## FINDINGS OF FACT

On November 7, 1990, Johnny Lee Spencer ("debtor") filed his voluntary petition for relief under 11 U.S.C. Chapter 7 ("Ch. 7") in this Court. Scott P. Kirtley was appointed and continues to serve as Trustee ("the Trustee") of Spencer's bankruptcy estate.

With his petition, debtor filed his "Statement of Financial Affairs for a Debtor Not Engaged in Business," together with various schedules of information. Debtor reports he "is employed by: self" as "entrepreneur(?)." He reports gross and take-home pay of $1,500 per month, with no "anticipat[ion of] a substantial change ... in the immediate future," and expenses of $1,704 per month, for a net deficit of income under expenses of −$204 per month. Debtor's reported expenses include zero for rent or home mortgage payment, utilities and maintenance costs of $335 per month, no taxes, no alimony or support payments, insurance payments of $50 per month, food expenses of $300 per month, miscellaneous personal expenses totalling $80 per month, transportation expenses of $300 per month, installment payments for "auto" and to "American Bank" totalling $439 per month, and unspecified "other expenses" of $200 per month. Debtor reported no tax debts, no secured debts, and unsecured debts totalling $38,500, of which $31,000 was claimed by Gentry and was "disputed" by debtor. Debtor reported assets totalling $9,654.98, all of which were claimed exempt. These included 3 lots of real property in Bristow, Oklahoma, valued at only $3,500; cash on hand of $4.98; deposits of $500; household goods, wearing apparel, etc. valued at $1,000; one pick-up truck valued at $3,000; and "½ an interest in 11 quarterhorses" valued at $1,650.

By order filed November 20, 1990, pursuant to F.R.B.P. 4004(a), 4007(c), the last day for filing complaints under 11 U.S.C. §§ 523(c), 727(a) was fixed at February 11, 1991. On said date, the Trustee and creditor Mary Gentry ("Gentry") filed motions to extend said deadline. The Trustee's motion was granted by order filed February 12, 1991, and said deadline was extended to

April 11, 1991. By inadvertence, Gentry's motion was not granted until July 8, 1991.

On April 11, 1991, the Trustee filed his complaint commencing adversary proceeding 91–0100–W, seeking denial of Spencer's discharge under 11 U.S.C. § 727; and on the same day Gentry filed her complaint seeking denial of Spencer's discharge under 11 U.S.C. § 727 and possibly relief from stay under 11 U.S.C. § 362 and/or exception to discharge under 11 U.S.C. § 523. The complaints alleged that debtor had fraudulently concealed some of his assets while negotiating and performing a settlement of his divorce action against Gentry; transferred assets "to a third party, one Linda Buchanan ["Buchanan"], without consideration" and "in an attempt to defraud creditors and in patent violation of the Oklahoma Uniform Fraudulent Transfers Act;" did not "properly schedule and reveal such transactions in this bankruptcy;" did not at first disclose to the Trustee and creditors the existence of a lawsuit in State court by Gentry against Spencer and Buchanan to avoid and recover such fraudulent transfers; but "under cross-examination at the First Meeting of Creditors [held pursuant to 11 U.S.C. §§ 341, 343] admitted against interest as to making such transfers ..."

Debtor at first did not answer the complaints, but moved to dismiss them on grounds that amounted to a misplaced, untimely and meritless collateral attack on the extensions of time to file such complaints. The motions to dismiss were denied by orders filed on July 8, 1991. Debtor attempted to appeal said order, but leave to appeal was denied, on grounds of debtor's own laches, by order of the United States District Court filed on October 16, 1991.

Debtor answered the complaints on July 11, 1991, denying all of the substantive allegations thereof without explanation save to state that he "did list the lawsuit, he only made a mistake as to the case number ..."

A first pre-trial conference was held on July 31, 1991, and a scheduling order issued which called for filing of dispositive motions and/or amendments to pleadings by October 31, 1991; final pre-trial conference on November 6, 1991; and trial on November 12, 1991. On September 25, 1991, the Trustee made application to hire as his own attorney "to litigate the recovery of possible fraudulent transfers and objections to the Debtor's discharge" Gentry's attorney, John Freese, pursuant to 11 U.S.C. § 327(c). Said application was granted by order filed September 27, 1991. On October 31, 1991, the Trustee moved to amend his complaint to add an additional cause of action for recovery of fraudulent transfers against an additional defendant, Buchanan. Said motion was granted by order filed on November 1, 1991; but in consequence thereof, at final pre-trial conference on November 6, 1991 the scheduling order was amended, as follows: the Trustee was to file his amended complaint by November 13, 1991; answer thereto was to be filed by December 13, 1991; discovery was to be completed, and any dispositive motions filed, by December 30, 1991; a pre-trial order was to be filed by the Trustee and Gentry by January 6, 1992; any objections thereto were to be filed by January 13, 1992; and trial was continued to January 21, 1992.

An amended complaint was filed in Adv. No. 91–0100–W on November 12, 1991. Buchanan never answered said amended complaint.

On December 31, 1991, the Trustee and Gentry "move[d] this Court to enlarge the time for completion of discovery ... to January 3, 1992," because Spencer's and Buchanan's attorney had been engaged in moving his office and "has not signed the agreed Stipulation nor otherwise responded to inquiries." Said motion was granted the same day, but otherwise the amended scheduling order remained in effect.

On January 13, 1992, one week before the scheduled date of trial, Spencer filed in his main bankruptcy case a "Notice of Conversion to Chapter 13—U.S.C. § 706(a)" and a "Memorandum Brief In Support ..." thereof. In said "Notice ...," debtor stated that he "has made arrangements with his friend Linda Buchanan for financial

help to allow him to pay $100.00 per month ... for 5 Months followed by 31 payments of $300.00 ..." Three days later, on January 16, 1992, Spencer filed in the adversary proceedings his "Motion to Strike Trial Set on 1/21/9[2]," asserting that Spencer's main bankruptcy case "is now a Chapter 13 case and the cause of action relied upon by [the Trustee and Gentry] does not lie in a Chapter 13 setting" and praying "for an Order ... striking the trial set on January 21, 1992 as moot."

On January 17, 1992, this Court, "[i]n accordance with Bankruptcy Rule 1017(d) ... consider[ed] the Notice of Conversion to Chapter 13 as a motion to convert and set ... the same for hearing on February 14, 1992 ..." On the same day, this Court by separate order denied Spencer's motion to strike trial, "observing ... that a notice of conversion of a case from ... Chapter 7 to ... Chapter 13 does not convert said case; and that the case ... out of which this adversary proceeding arises is a Chapter 7 case at this time, and ... the trial of the same is not moot."

On the same day, the Trustee filed his "Objection ... to Notice of Conversion to Chapter 13," alleging that Spencer's "filing of a Notice of Conversion ... is simply an attempt to delay the trial set for January 21.... [and] an attempt to defraud this Court and [Spencer's] creditors ... [Spencer] has ... ma[de] fraudulent transfers [and i]t is unlikely he will continue his fiduciary duty by litigating this adversary proceeding [against Buchanan] ... [Spencer] should not be able to convert this case without paying the costs of administration of the Chapter 7 [e]state ... [which] the Trustee estimates ... at $10,000.00 ... the payments under the proposed Plan would total only $9,800.00. The avoidance of the fraudulent transfer will result in a greater distribution to creditors ... [Spencer] has not established his disposable income or feasibility ... to make payments."

On January 21, 1992, Adv. Nos. 91–0100–W and 91–0101–W came on for trial. The Trustee appeared in person and by his attorney, and Gentry by her attorney, and announced themselves ready for trial. Nei-

ther Spencer nor Buchanan appeared in person, although their attorney, Kenneth Todd, did appear. The Trustee and Gentry moved for default judgment against Buchanan for her failure to answer, and summary judgment against both Buchanan and Spencer for failure to respond to discovery requests. As Buchanan's attorney, Mr. Todd declared that forcing the Trustee and Gentry to put on their evidence would be "wasting time" and that he had no objection to entry of default judgment against Buchanan. Thereupon, the Court granted the Trustee and Gentry the relief sought in their amended complaint, namely avoidance of transfers to Buchanan. As Spencer's attorney, Mr. Todd declared that Spencer "would like to stand on his notice [of conversion];" that Spencer "ha[d] no defense" against denial of discharge; that Spencer had made transfers fraudulent as to creditors, though perhaps within 4 years and not within 1 year before filing his Ch. 7 petition; and that Spencer had failed to keep books and records from which his financial condition might reasonably be ascertained, no excuse therefor being offered. Mr. Todd did not so confess that Spencer had been guilty of any false oath in this bankruptcy case. Thereupon, the Court granted the Trustee and Gentry the relief sought in their original complaints, namely denial of Spencer's discharge pursuant to 11 U.S.C. 727(a). The Court stayed its order denying Spencer's discharge, until final determination of related issues, i.e. Spencer's "Notice of Conversion ..." and the Trustee's "Objection ..." thereto, which were set for hearing on February 14, 1992.

## CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O), 11 U.S.C. § 706(a).

■ There are two purely legal questions before the Court: (1) what is the procedural mechanism of conversion from Ch. 7 to Ch. 13—is conversion automatic on the filing of a "notice of conversion" by debtor, or is it consequent to debtor's motion to convert and the granting of such motion by an order of the Court; and (2)

may conversion by debtor from Ch. 7 to Ch. 13 pursuant to 11 U.S.C. § 706(a) be conditioned, denied, or in any manner restricted by the Court—or is such conversion debtor's "absolute right," regardless of circumstances? The two questions are related; for, if conversion under § 706(a) must be allowed no matter what the circumstances, then no purpose would be served by motion and order; but if such conversion is not "absolute," then due process demands opportunity to object to conversion on appropriate grounds, and motion and order would be called for. Therefore the Court will address first the substantive question of the extent of debtor's "right" to convert under § 706(a), and thereafter will take up the procedural question of the proper method of conversion.

Conversion from Ch. 7 to Ch. 13 is governed by 11 U.S.C. § 706(a), which provides that

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

This subsection's legislative history remarks that

> Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable,

S.Rep. No. 95–989 (July 14, 1978) p. 94, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880.

The statute itself expressly imposes one condition on debtor's right to convert—i.e., that "the case has not [already] been converted [from another chapter to Ch. 7] ..." But the present Ch. 7 case has never been previously converted from any other chap-

ter; so this express statutory reservation is inapplicable.

 All courts possess inherent power to protect their jurisdiction and process from abuse, *In re Higginbotham,* 111 B.R. 955, 961 (B.C., N.D.Okl.1990); 1 *Moore's Federal Practice* (2d ed. 1991) ¶ 0.60[6]; 20 AM.JUR.2D (1965) §§ 78, 79. Such powers need not be specified in each and every statutory section or subsection under which judicial proceedings may occur—indeed, it has been said that legislatures cannot take away such general powers even if they would attempt to, 20 AM.JUR.2D supra, § 78 p. 440. Whatever may be the case regarding courts at law, certainly courts of equity are empowered (and, in the nature of their jurisdiction, required) to see to it that their process is used in an equitable manner. "Bankruptcy is essentially an exercise in intelligent equity, albeit regularized by Congressional enactments," *In re First Security Mortgage Co., Inc.,* 117 B.R. 1001, 1008 (B.C., N.D.Okl.1990). "We cannot assume that Congress has disregarded well settled principles of equity ... Good sense and legal tradition alike enjoin that an enactment of Congress dealing with bankruptcy should be read in harmony with the existing system of equity jurisprudence of which it is a part," *Securities & Exchange Comm. v. United States Realty & Improvement Co.,* 310 U.S. 434, 457, 60 S.Ct. 1044, 1054, 84 L.Ed. 1293, 1304.

 It follows that any action taken before this Court, under 11 U.S.C. or any other statute, is always subject to review for bad faith, as an abuse of the court's jurisdiction or process, for gross inequity (e.g. sufficient to raise an estoppel), or on similar ground. This includes attempted conversion from Ch. 7 to Ch. 13 under § 706(a).

As noted above, legislative history of 11 U.S.C. 706(a) declares that "The policy of the provision is that the debtor should always be given the opportunity to repay his debts ...," S.Rep. No. 95–989, p. 94, U.S.Code Cong. & Admin.News 1978, p. 5880. But the provision should be applied in such a way that this policy is furthered,

not frustrated. Where conversion to Ch. 13 amounts to an attempt to escape debts rather than to repay them, the reason for the rule ceases—and there the rule ceases also.

> [W]here the presumption's own underpinnings collapse—where there is a clear abuse of Congress' own intentions as to the use of Chapter [13], and a clear violation of those fundamental equities on which a discharge-injunction must be founded—then the courts may still act to prevent the perversion of Congressional policy and gross imposition on the courts themselves,

*In re Higginbotham,* 111 B.R. pp. 963–964.

Debtor cites *In re Martin,* 880 F.2d 857 (5th Cir.1989) supposedly to the contrary. In fact, that decision ruled as follows:

> ... a debtor's right to convert under section 706(a) is, as indicated by the statute and its legislative history, an absolute one. The courts refuse to interfere with that right *in the absence of extreme circumstances. Calder,* 93 B.R. at 940. Because Martin does not allege *facts which if true would provide an adequate ground to deny the debtor's motion to convert,* we agree with the district court's conclusion that the bankruptcy court erred in denying the conversion,

*id.,* p. 859 (emphases added). This Court agrees: "debtor's right to convert" is "absolute" only "in the absence of extreme circumstances." In the presence of extreme circumstances, debtor's right to convert can be conditioned or denied as necessary to prevent injustice to other parties and imposition on the Court. Accord, *In re Safley,* 132 B.R. 397 (B.C., E.D.Ark.1991), *In re Calder,* 93 B.R. 739 (B.C., D.Utah 1988), *In re Straugh,* 41 B.R. 757 (B.C., W.D.Penn.1984); and see *In re Jennings,* 31 B.R. 378 (B.C., S.D.Ohio 1983) (conversion from Ch. 7 to Ch. 13 allowed, but "Given the questionable nature of the debtor's conduct in this case thus far, his failure to cooperate with the trustee, and the trustee's diligence in bringing debtor's actions to light, equity dictates that the debtor be required to reimburse the trustee for reasonable attorney fees and costs expended in this case thus far," *id.* p. 380), *In re Parameswaran,* 64 B.R. 341 (B.C., S.D.N.Y.1986) (conversion from Ch. 7 to Ch. 13 allowed, but Trustee and her attorney awarded fees in *quantum meruit* and for "having achieved excellent results in successfully objecting to the debtor's discharge and blocking the transfer of the debtor's interest in the house ...," *id* p. 344).

■ If debtor's right to convert under § 706(a) can be subject to objection "in ... extreme circumstances," then due process requires a reasonable opportunity to make any such objections known and enable them to be heard.

F.R.B.P. 1017(d) provides in pertinent part that "Conversion ... pursuant to § ... 706(a) ... shall be on motion filed and served as required by [F.R.B.P.] 9013." Rule 9013 provides that

> A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought. Every written motion other than one which may be considered ex parte shall be served on the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.

The phrase "on those entities specified by these rules" appears to refer in turn to F.R.B.P. 2002(a), which provides in pertinent part that

> ... the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of ... (5) in a chapter 7 liquidation case ... the hearing on ... the conversion of the case to another chapter ...

In sum, these rules require conversion from Ch. 7 to Ch. 13 to be accomplished as follows: debtor files a motion to convert,

and serves said motion on the Trustee and all creditors, at least 20 days before any hearing on the same.

■ Debtor argues that this procedure conflicts with 11 U.S.C. § 706(a), and that therefore F.R.B.P. 1017(d) is in this respect invalid. Where a bankruptcy rule does conflict with a statute, certainly said rule is invalid, 28 U.S.C. § 2075. But F.R.B.P. 1017(d) and its allied rules do not conflict with 11 U.S.C. § 706(a). Those rules serve well to provide a reasonable opportunity to make known any objections based on either prior conversion or "extreme circumstances." Hence those rules are not invalid, and should be obeyed.

Debtor compares 11 U.S.C. § 706(a) with § 1307(a), which provides that

The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

Debtor asserts that "the language of § 1307(a) is identical with the language in § 706(a)." Debtor apparently infers from this that conversion under the "identical" statutes, §§ 706(a) and 1307(a), should be accomplished by identical procedures; notes that F.R.B.P. 1017(d) provides that "A chapter 13 case shall be converted without court order on the filing by the debtor of a notice of conversion pursuant to § 1307(a);" and concludes that "the filing by the debtor of a notice of conversion" should likewise suffice under § 706(a).

§ 706(a) contains an express condition ("if the case has not [already] been converted [from another chapter to ch. 7] ...") which § 1307(a) does not contain. Otherwise, the language of the two statutes is substantially the same. But this alone proves nothing: since § 706(a) is subject to implicit exceptions, so might § 1307(a) be.

F.R.B.P. 1017(d) formerly provided that conversions under both §§ 706(a) and 1307(a) should be by motion and order. The rule was amended in 1987 to provide for conversion under § 1307(a) by debtor's filing of a notice of conversion. According to the Advisory Committee Notes to 1987 Amendments to these rules, the new notice "procedure is modeled on the voluntary dismissal provision of Rule 41(a)(1) F.R.Civ. P." F.R.Civ.P. 41(a)(1) has, in turn, been allowed to be subject to "exceptional equitable considerations," *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 916 (5th Cir.1975) referring to *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Circ.), cert. den. 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). The same presumably applies to F.R.B.P. 1017(d) as amended. Therefore, even where "notice of conversion" is the proper procedure, conversion is not absolutely automatic, but is subject to "exceptional equitable considerations."

If F.R.B.P. 1017(d) were read to cut off all possible opportunity to object to conversion *from Ch. 13 to Ch. 7*, it is possible that Rule 1017(d) might be invalid in that respect, as a violation of due process and an infringement on fundamental powers of the judicial branch. But this would not affect the validity of F.R.B.P. 1017(d) insofar as it does provide opportunity to object to conversion *from Ch. 7 to Ch. 13*.

It is possible that both 11 U.S.C. § 1307(a) and F.R.B.P. 1017(d) as amended were influenced by fears of locking Ch. 13 debtors into an involuntary servitude, unconstitutional under the 13th Amendment to the United States Constitution, H.Rep. No. 95–595 (1977) pp. 120–121. It seems improbable that any voluntary bankruptcy case could involve an unconstitutional "involuntary servitude," *In re Higginbotham*, 111 B.R. pp. 961–963, 966–967. In any event, such considerations are entirely out of place in a Ch. 7 liquidation case, such as this one. Even if the 13th Amendment requires that debtors be allowed to escape *from* Ch. 13 no matter what the circumstances, there can be no requirement that debtors be allowed to escape *to* Ch. 13 no matter what the circumstances.

The Court concludes that § 706(a) permits debtor to convert from Ch. 7 to Ch. 13 only if the case has not previously been converted from another chapter, *and* in the absence of extreme circumstances amounting to bad faith, imposition on the Court's

jurisdiction, abuse of process, or other gross inequity (e.g., sufficient to raise an estoppel); and that F.R.B.P. 1017(d)'s requirement of conversion on motion and order is a valid means of implementing said statute.

■ It remains to be determined whether this case exhibits such "extreme circumstances" as would justify restraint on conversion—and, if so, what kind or degree of restraint is appropriate.

As noted above, "the policy of [encouraging conversion to Ch. 13] is that the debtor should always be given the opportunity to pay his debts." This comports with "the basic objective" of Ch. 13 itself, which is to "help ... debtors *repay* debts rather than discharge them," *In re Jernigan*, 130 B.R. 879, 893 (B.C., N.D.Okl.1991) (emphasis original). Whether a Ch. 13 debtor is in "good (or bad) faith" depends upon whether said debtor acts in accordance with this "basic objective," *id.* pp. 887–893.

... "[G]ood faith" in Ch. 13 means debtor's attempt to restore normal financial relations with creditors, to the extent reasonably feasible under the circumstances. Both debts and assets, creditors' interest and debtor's interest, must be taken into account and fairly accommodated. What is "fair enough" may be a range of permissible alternatives rather than a single "right" way, and will vary according to circumstances; but there must be a reasonable balancing of interests and minimization of harm,

*id.* pp. 893–894. The relevant circumstances—debtor's pre-bankruptcy history and post-bankruptcy conduct, prospects and proposals—must evidence "ordinary prudence in search of a fair chance," *In re Henricksen*, 131 B.R. 467, 472 (B.C., N.D.Okl.1991).

■ Debtor's good faith in Ch. 13 may be addressed in two different contexts: good faith in commencing Ch. 13 in the first place, and good faith in proposing a plan after commencement of the case, *In re Jernigan*, 130 B.R. p. 894. The former usually arises upon a Trustee's or creditor's motion to dismiss under 11 U.S.C. § 1307(c); the latter usually arises at con-

firmation hearing under 11 U.S.C. §§ 1321, 1324, 1325(a)(3).

If lack of good faith is urged as a *cause for dismissal*, the question would ordinarily be whether the Ch. 13 case should ever have been filed at all—whether debtor needs or deserves relief of any sort under Ch. 13—whether the mere filing of the case is sufficient to abuse Ch. 13's provisions, such that the appropriate remedy is dismissal of the case without waiting for debtor's plan to come on for confirmation. But if lack of good faith is urged as *ground for denial of confirmation of a proposed plan*, the question would ordinarily be whether a debtor who admittedly needs or deserves relief of some sort under Ch. 13 has proposed a plan which would treat debtor and creditors in a manner consistent with Ch. 13's purposes and policies—whether the proposed plan will do, or whether another and better one should be proposed instead ... These ... different questions ... certainly overlap but are not identical and should be distinguished from each other as appropriate,

*In re Jernigan*, 130 B.R. p. 894. In the present case, the issue of good faith arises in still another context, namely debtor's attempt to convert from Ch. 7 to Ch. 13. But this is comparable to "cause for dismissal" after filing under Ch. 13; and may be considered merely another procedural variation on the basic issue of good faith in commencing Ch. 13 in the first place.

Therefore, the precise question is whether debtor needs or deserves relief of any sort under Ch. 13—whether the mere conversion of the case is sufficient to abuse Ch. 13's provisions, demonstrating an attempt to evade debts rather than repay them—such that the appropriate remedy is denial or conditioning of conversion without waiting for debtor's plan to come on for confirmation.

■ Debtor's pre-bankruptcy conduct, and his conduct in Ch. 7 before conversion to Ch. 13, are relevant and can even be decisive factors in indicating wrongful motive and bad faith, *In re Rasmussen*, 888 F.2d 703 (10th Circ.1989). In the present

case, debtor's financial difficulties involve a single main creditor, and spring chiefly from debtor's own attempt to circumvent a divorce decree by questionable means. Debtor negotiated a decree while concealing some of his property; made fraudulent transfers to an individual who may be an insider, see 11 U.S.C. § 101(31); filed bankruptcy under Ch. 7, which minimized the likelihood of any recovery by creditors; resisted the attempt of Trustee and creditor to recover the property, on the basis of no genuine defense; committed acts justifying denial of discharge; and attempted to flee into Ch. 13 only after debtor's efforts to "have it all his way" in Ch. 7 had failed, and when Trustee and creditor were on the verge of actually seizing back the fraudulently-transferred property. Conversion to Ch. 13 would have the effect of displacing the Trustee who was pressing debtor so hard in Ch. 7, see 11 U.S.C. § 348(e). The fate of the Ch. 7 fraudulent-transfer actions in Ch. 13 is uncertain, see *In re Jernigan*, 130 B.R. p. 887. In these circumstances, it is probable that debtor's attempt to convert to Ch. 13 is motivated more by a desire to escape the obligations of Ch. 7, to derail the recovery of his fraudulently-transferred assets and to exhaust his pursuers, than by any desire to repay his debts.

■ However, courts should exercise great caution in limiting access to Ch. 13 solely on the basis of past conduct. If Ch. 13 is open only to debtors who never did anything at all wrong, then Ch. 13 will be open to very few; and such stringent screening would be inconsistent with Congressional intent to encourage resort to Ch. 13, *In re Jernigan*, 130 B.R. pp. 890–892. As a rule, debtor's conduct before Ch. 13 should be less important than his prospects and proposals in Ch. 13.

Debtor's prospects in Ch. 13 are poor. Debtor appears uncertain of his own occupation, calling himself "entrepreneur(?)." Even if debtor is an "entrepreneur," an "entrepreneur's" access to *regular* income—a condition of eligibility for Ch. 13 under 11 U.S.C. § 109(e)—is questionable. Debtor's own Ch. 7 schedules of current income and expenditures show a net deficit of −$204 per month, indicating that payments to creditors in a Ch. 13 plan would be infeasible. Debtor proposes to accomplish payments totalling $9,800 over 3 years with the "help" of a non-debtor, his "friend Linda Buchanan," who is the recipient of the fraudulent transfers. The Court has presently neither knowledge of nor control over Buchanan's finances. Moreover, if the Trustee's estimate of the value of the transferred property is correct, then $9,800 might not suffice to give creditors in Ch. 13 at least as much as they would have received in Ch. 7; and any Ch. 13 plan might fail of confirmation under 11 U.S.C. § 1325(a)(4).

However, these matters remain unclear and speculative at this time, since no evidence has been taken on debtor's or Buchanan's income or on the value of the fraudulently-transferred property, and since debtor has made suggestions but has not actually filed a plan.

At this point, therefore, the evidence is suggestive of debtor's bad faith, but is incomplete and by no means conclusive. The missing elements—debtor's plan provisions, his occupation and income, Buchanan's financial affairs, the value of property and expected recovery in Ch. 7—are all appropriate matters for the confirmation hearing. Here, it appears that the question of debtor's good faith in commencing a case under Ch. 13 cannot be confidently answered without considering debtor's plan. Here, a rigid distinction between good faith in commencement of a case and good faith in proposal of a plan is not appropriate. It follows that final determination of debtor's good faith in converting the Ch. 13 must await determination of debtor's good faith in proposing a Ch. 13 plan.

■ Of course, debtor's Ch. 13 plan could only be proposed in good faith if it made a serious, prudent and reasonably effective effort to restore normal financial relations with creditors. If debtor is to displace the Ch. 7 Trustee, debtor may be required to conduct his Ch. 13 case as if debtor were himself a Trustee, if appropri-

**516**

ate even continuing the Ch. 7 Trustee's efforts to recover fraudulently-transferred property for the benefit of creditors, see *In re Jernigan,* 130 B.R. pp. 887, 890–891, 896. In the present circumstances, debtor might do more than just recover the property—he might offer some improvement over Ch. 7, else there would be no reason to leave Ch. 7 in the first place.

■ Debtor has caused the Trustee, Gentry and their attorney to spend over a year litigating in Ch. 7. The Trustee estimates Ch. 7 administrative expenses at $10,000. The actual amount of these expenses is one more matter to be determined before all the "circumstances" in this case are well in hand. But it is incontestable that the Trustee, Gentry and their attorney have spent considerable time and expense in the Ch. 7 case overcoming debtor's attempted manipulation of that proceeding to his own illegitimate ends. These circumstances—wrongful conduct by debtor, inducing a change of position by the Trustee, Gentry, and their attorney, to their innocent detriment—are sufficient to raise an estoppel, *Federal Deposit Insurance Corp. v. Palermo,* 815 F.2d 1329, 1338 (10th Circ. 1987), *Hillyer v. Pan American Petroleum Corp.,* 348 F.2d 613, 622–623 (10th Circ.1965), *Brown–Crummer Inv. Co. v. Paulter,* 70 F.2d 184, 186 (10th Circ.1934), *Rader v. Star Mill & Elevator Co.,* 258 F. 599, 606 (8th Circ. [Okl.] 1919), *Apex Siding and Roofing Co. v. First Federal Savings and Loan Assoc. of Shawnee,* 301 P.2d 352, 355 (Okl.1956). That is, debtor may be estopped from converting to Ch. 13 until he has cured the harm he induced in Ch. 7. However, it is possible that this, too, might be cured by debtor's Ch. 13 plan. Debtor cannot, of course, cast his Ch. 13 plan so as to effectively make his other Ch. 13 creditors pay for the harm debtor caused in Ch. 7. See *In re Jennings,* supra; *In re Parameswaran,* supra.

Proposing a proper and feasible plan in such circumstances may be difficult. And, if the court eventually determines that debtor is not and never was in good faith, while legal costs continue to accumulate and debtor may be subject to estoppel and

damages, debtor may eventually find himself worse off than he is now. But debtor and his attorney ask, indeed demand, to take this burden and risk on themselves.

■ The Court concludes that debtor's motion to convert from Ch. 7 to Ch. 13 should be and is hereby granted, subject to the following conditions: that issues of debtor's bad faith, abuse of jurisdiction and process, estoppel, and the like are not finally determined by this order, but are merely continued for more opportune determination as the Ch. 13 case progresses; and that debtor and/or his attorney may be answerable to the Ch. 7 Trustee and his attorney (notwithstanding 11 U.S.C. § 348(e)) and to Gentry and her attorney and to any other parties, for costs and other damages incurred in both Ch. 7 and Ch. 13 proceedings, if necessary and as may appear appropriate.

AND IT IS SO ORDERED.