**In re George L. YOUNG, Debtor.**

**In re Professional Business
Services, Inc., Debtor.**

Nos. 01–50704–JWV, 01–50707–JWV.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Nov. 15, 2001.

Robert M. Cook, Yuma, AZ, for Debtors.

Robert A. Pummill, Overland Park, KS, trustee.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

On August 20, 2001, several creditors filed Involuntary Petitions pursuant to 11 U.S.C. § 303 seeking to have George L. Young, an individual ("Young"), and Professional Business Services, Inc., ("PBS") a corporation involved in management of Young's cattle business, placed in Chapter 7 bankruptcy proceedings. On August 22, 2001, Young and PBS, by counsel, filed Answers in which they consented to the entry of an Order for Relief, and that Order was entered on the same day. Now, the Debtors have filed Motions to Convert ("Motions") both cases to Chapter 11, and that is the matter now before the Court.

The Court held a combined hearing on the Motions on October 26, 2001. The Motion to convert the Young case was opposed by Robert A. Pummill, the Trustee in the Young case; David C. Stover ("Stover"), the Trustee in the related case of United Livestock Services, Inc. ("United Livestock;" Case No. 01–44229); the United States Trustee ("UST"); United Producers, Inc., one of the owners of United Livestock, and a creditor or potential creditor; and First National Bank of Omaha, a creditor. The Motion to convert the PBS case was opposed by Stover; the UST; First National Bank of Omaha; and Erlene W. Krigel ("Krigel"), the Trustee in the PBS case. Counsel for the various parties made oral arguments, and Krigel presented evidence in support of her opposition to the PBS Motion. The Court then took the matter under advisement. The Court has now reviewed the arguments, has reviewed the briefs and suggestions filed, has conducted its own independent

research of the issues, and is now ready to rule.

For the reasons set out herein, the Court will deny the Motions in both cases.[1]

## FACTUAL BACKGROUND

Some review of the background of these cases is necessary to an understanding of the present issues and the Court's ruling.

Young, a resident of Grant City, in northwest Missouri, had been engaged in extensive cattle operations in Missouri, Iowa, and Nebraska prior to August 10, 2001. Management of the somewhat dispersed operations was conducted by PBS, which is owned by Young and Kathleen McConnell ("McConnell"). On August 10, 2001, Young apparently notified U.S. Bank National Association ("U.S. Bank"), one of his major creditors, that he was unable to continue the operation of his cattle business and could not care for the cattle he owned or was managing for others, and suggested that the Bank should make arrangements for the care of the cattle.[2] Early on in these cases, the Trustees in the Young and PBS cases filed various pleadings in which they alleged that, on their best information and belief, Young had sold interests in approximately 210,000 head of cattle, but that the Trustees were able to locate only about 16,400 cattle, spread out on 43 feedlots and farms in Missouri, Iowa, and Nebraska.

Since the filing of these cases,[3] the Debtors—Young and PBS—have filed their bankruptcy schedules, and the schedules indicate that Young had sold interests in 343,937 head of cattle—*not* 210,000, as the Trustees believed—and that there were only 28,784 cattle in existence.[4] Also since the filing of these cases, the Court has entered various Orders to authorize the sale of fat cattle and feeder cattle by the Trustees and has approved bidding procedures for the sale of the cattle, real estate, and equipment owned by Rio Baca and Rio Timba. In addition, the Court has entered Orders in the Young, PBS, and United Livestock cases approving procedures for the filing of ownership claims as to the livestock and establishing procedures for all parties to obtain access to the voluminous paper and computer records that have been under the control of the Federal Bureau of Investigation ("FBI").

The parties have stipulated that the Debtors have represented to the Court and creditors that the FBI is conducting

---

**1.** This Memorandum Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**2.** Although the Court has held numerous hearings in these cases, the letter containing this notification has never been placed in evidence. However, attorneys for various parties have repeatedly alluded to it, without objection, and the Court will accept that such a letter was sent to U.S. Bank (and perhaps other interested parties). Regardless of how the cessation of business was handled, there is no dispute that Young ceased caring for all of the cattle on August 10, 2001.

**3.** An Involuntary Petition was filed against United Livestock on August 28, 2001, and an

Order for Relief was entered on September 25, 2001; Stover was appointed as the Interim Trustee on an emergency basis prior to the entry of the Order for Relief. Two other related cases—Rio Baca, Inc., ("Rio Baca") and Rio Timba, Inc. ("Rio Timba")—were transferred from the Bankruptcy Court for the Southern District of Iowa to this Court on September 13, 2001, and September 19, 2001, respectively. The Rio Baca and Rio Timba cases were originally filed as voluntary Chapter 11 proceedings in Iowa. This Court entered an Order on November 1, 2001, converting both of these cases to Chapter 7.

**4.** The schedules were not signed by Young or McConnell, however, apparently because of their concerns (and their lawyers' concerns) as to possible self-incrimination.

an investigation into the activities of Young and McConnell in connection with their cattle operations.

On September 24, 2001, Robert M. Cook ("Cook"), counsel for Young and PBS, announced in open Court that he was invoking the Debtors' "absolute right" to convert the Young and PBS cases to Chapter 11, pursuant to 11 U.S.C. § 706(a), and Cook has since filed various pleadings indicating (at least in the captions) that the cases were converted to Chapter 11 on that date. However, the Court directed Cook to file a written Motion to Convert and to give notice of the Motions to all creditors and parties in interest, and the Court scheduled and noticed a hearing on the Motions for October 26, 2001. As previously noted, that hearing was held on October 26, at which time the Court received evidence and heard the arguments of counsel.

At that hearing, Cook informed the Court in argument that the Debtors do not wish to have the cases converted so that they may become the debtors-in-possession and attempt to reorganize, and that they would consent to the immediate appointment of Chapter 11 trustees. Rather, the Debtors want the opportunity to present a plan of distribution for the assets. Cook informed the Court that Young and McConnell would not be willing to testify at any hearings, such as a § 341 meeting of creditors, because of the ongoing criminal investigation into their activities. And, as previously noted in footnote 4, Young and McConnell have declined to sign their bankruptcy schedules under penalty of perjury, apparently because of fears of possible self-incrimination.

The only witness to testify at the hearing was Krigel, the PBS Trustee, who testified that she has uncovered various accounts and assets that were not disclosed by the Debtors on their schedules. Krigel stated that records produced by the Bank of America indicated deposits and transfers in the Debtors' accounts exceeding $10 million in the first 10 days of August, before Young ceased his operations. Krigel also noted that PBS had transferred—perhaps improperly—$100,000 of its funds to the criminal defense attorney for McConnell.

## DISCUSSION

It is the Debtors' position, as enunciated by Cook, that the Debtors have an absolute right to convert these Chapter 7 proceedings to Chapter 11, on the basis of the provision in 11 U.S.C. § 706(a) that "[t]he debtor may convert a case under this chapter to a case under chapter 11 at any time." In his Motions, Cook quotes the Historical and Revision Notes to § 706(a) to the effect that "Subsection (a)...gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization...case...The policy...is that the debtor should always be given the opportunity to repay his debts and waiver of the right to convert a case is unenforceable."

The opponents assert that, while the Debtors may have a "presumptive right" to convert to Chapter 11, they have no absolute right to convert, and that there are exceptional circumstances in this case that overcome any "presumptive right" to convert. They also argue that a conversion to Chapter 11 and the administration of a Chapter 11 case would add major expenses to the cases, such as for numerous committees and the UST's statutory fees. They further argue that, because of the pending threat of criminal prosecution, Young and McConnell will not be able to carry out their fiduciary duties under the Bankruptcy Code, and that their refusal to cooperate and perform their duties will impede the efficient administration of the

estates. Finally, Krigel suggests that the Debtors are not entitled to an order of conversion because of their apparent concealment or diversion of assets.

■ As a preliminary matter, the Court will address the procedural issue of whether a debtor may effect an "automatic" conversion from Chapter 7 to Chapter 11 simply by announcing the intention to convert in open court and by filing a Notice of Conversion. That is the procedure Cook has attempted to follow in these cases. However, it is not the proper procedure.

Rule 1017(f)(2) of the Federal Rules of Bankruptcy Procedure provides that a conversion or dismissal under sections 706(a), 1112(a), 1208(b), or 1307(b) shall be on a motion filed and served as required by Rule 9013. FED. R. BANK. P. 1017(f)(2). Rule 9013 requires that "[e]very written motion other than one which may be considered ex parte shall be served by the moving party...on those entities specified by these rules or...[on] the entities the court directs." FED. R. BANK. P. 9013. Rule 2002(a)(4) requires that all interested parties be given 20 days' written notice of the hearing on conversion of a Chapter 7 case to any other chapter. FED. R. BANK. P. 2002(a)(4). Taken together, these Rules make it clear that the mere filing of a notice of conversion is insufficient to effect a conversion and that an order is necessary; otherwise, the provisions for the filing of a motion and for notice and a hearing would be meaningless. *See In re Krishnaya*, 263 B.R. 63, 65 (Bankr. S.D.N.Y.2001) ("It is plain, from Rule 1017(f), that mere notice of conversion is

insufficient..."); *In re Dipalma*, 94 B.R. 546, 549 (Bankr.N.D.Ill.1988) ("The rule makers certainly intended that conversion of a Chapter 7 case be accomplished by the entry of an order, not the mere service of notice."); *Calder v. Job (In re Calder)*, 973 F.2d 862, 867 (10th Cir.1992) (Conversion is only effective upon entry of a conversion order by the Court.).[5] In this case, the "notice of conversion" which Cook announced in open court on September 24, 2001 and the filing of Notices of Conversion on September 25, 2001, were ineffective to convert these cases to Chapter 11, and the Notice of Conversion subsequently filed in each case will be stricken from the record. *In re Latin Investment Corporation*, 125 B.R. 327, 327–28 (Bankr.D.C. 1991). Further, references by the Debtors' counsel in subsequent pleadings and captions to the date the cases were converted to Chapter 11 are improper and inaccurate and should be disregarded.

■ We turn, then, to the substantive issue—whether the Debtors have an absolute right under § 706(a) to convert these cases to Chapter 11, or whether, alternatively, conversion from Chapter 7 is a presumptive right that may be denied.

At first glance, a reading of § 706(a) and the legislative history would seem to support the Debtors' argument in these cases that a debtor does, indeed, have an absolute, one-time right to convert a case from Chapter 7 to one of the reorganization chapters.[6] The Court does not agree with that argument.

Section 706(a) states:

---

5. This is in contrast to the procedure for conversion of a case *from* Chapter 12 or 13. Rule 1017(f)(3) provides that a Chapter 12 or Chapter 13 case "shall be converted *without court order* when the debtor files a notice of conversion under § § 1208(a) or 1307(a)." FED. R. BANK. P. 1017(f)(3),(emphasis added).

6. Some of the earlier cases so holding include *In re Mead*, 28 B.R. 1000, 1002 (E.D.Pa. 1983); *In re Sobin*, 99 B.R. 483, 484 (Bankr. M.D.Fla.1989); *Matter of Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987); *In re Easley*, 72 B.R. 948, 951 (Bankr.M.D.Tenn.1987); *In re Caldwell*, 67 B.R. 296, 300–01 (Bankr. E.D.Tenn.1986); *Street v. Lawson (In re*

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

The language that is often quoted as providing support for an absolute right of conversion is found not in the statute itself but in the legislative history:

Subsection (a) of this section gives the debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

S.Rep. No. 989, 95th Cong.2d Sees. 380, reprinted in 1978 U.S.C.C.A.N. 5787, 5880; H.R.Rep. No. 595, 95th Cong.2d Sess. 94, reprinted in, 1978 U.S.C.C.A.N. 5787, 5963, 6336.

A careful reading of the statute, its legislative history, and other provisions of the Bankruptcy Code does not, however, support the conclusion that a debtor has an absolute right to convert a Chapter 7 case. First, in analyzing a statute, the court must consider the actual words, and if the intent of Congress is clear from the plain language of the provision then that is the end of the inquiry; the court is not obligated to investigate legislative history unless the language of the statute is ambiguous. *See Arkansas AFL–CIO v. F.C.C.*, 11 F.3d 1430, 1440 (8th Cir.1993). "Where . . . the statute's language is plain, 'the sole func-

tion of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). There can be no quarrel that § 706(a) accords a debtor a right to convert a Chapter 7 case. *In re Marcakis*, 254 B.R. 77, 79 (Bankr. E.D.N.Y.2000). Section 706(a) states that a debtor may convert a Chapter 7 case to another chapter "at any time," if the case has not previously been converted. The words "at any time" quite obviously mean that the debtor may seek a conversion at any time in the life of the case. However, "at any time" is not the same as and does not mean "regardless of circumstances." *In re Starkey*, 179 B.R. 687, 692 (Bankr. N.D.Okla.1995).

Section 706(a) must be read in conjunction with the Rules, which require the filing of a motion, notice to creditors, and a hearing before an order of conversion is entered. See FED. R. BANK. P. 1017(f)(2), 9013, and 2002(a)(4), and the discussion of their provisions *supra*. If the right to convert were absolute, there would be no need to file a motion, notify creditors, and have a hearing; those procedures and the Rules would be useless and meaningless. *Krishnaya*, 263 B.R. at 65. The Rules lay out the procedures to be followed to implement a conversion. *Calder*, 973 F.2d at 867. The Court does not believe that the drafters of the Rules would have included those provisions in the Rules, or that the Supreme Court would have adopted those Rules, if the Rules were to have no purpose or meaning or that they were contrary to the statute. If the debtor has an absolute right to convert a Chapter 7 case, regardless of the circumstances, there would be no need for these rules and the debtor could simply follow the notice pro-

*Street* ), 55 B.R. 763, 765 (9th Cir. BAP 1985); *Matter of Jennings,* 31 B.R. 378, 380 (Bankr.

S.D.Ohio 1983).

cedure that was initially attempted by the Debtors' counsel in these cases. As previously noted, the Court refuses to believe that that is the proper procedure or what the statute and the Rules require.

The notion that a debtor has an "absolute right" to convert arises from the use of that phrase in the legislative history (quoted above) rather than from the language of the statute itself. This Court will not read that phrase literally into the statute; it is not warranted and leads to an erroneous conclusion.[7] Without argument, the legislative history clearly evidences Congress' intent that debtors be given an opportunity to repay their debts, but that right, like many other rights accorded debtors in the Bankruptcy Code, is not absolute and unfettered.[8] In this Court's view, a debtor has a presumptive right to convert a Chapter 7 case to a reorganization case, but that right is not absolute.[9]

■ This appears to be a case of first impression in this District, and the Eighth Circuit Court of Appeals has not spoken definitively on the issue. The courts that have wrestled with the issue are divided. Most of the earlier cases decided after enactment of the Bankruptcy Code in 1978

held that a debtor had the absolute right to convert, and those are the cases relied on by the Debtors here, as would be expected. (See footnote 6.) However, the later cases—and the better reasoned ones, in this Court's opinion—have variously held that the court has discretion to deny conversion when "extreme circumstances" amounting to bad faith are shown, where the conversion would amount to an abuse of the bankruptcy process, or where the conversion would violate the purposes and policy of the Bankruptcy Code.[10]

The leading Eighth Circuit case on the issue is *Martin v. Cox*, 213 B.R. 571 (E.D.Ark.1996), *aff'd mem.*, 116 F.3d 480 (8th Cir.1997). In that case, the District Court upheld the Bankruptcy Court's denial of the debtor's motion to convert from Chapter 7 to Chapter 13 where "extreme circumstances" amounting to bad faith were shown. Those "extreme circumstances" included the debtor's falsifying documents, failing to list significant assets, omitting pertinent information on schedules, filing false tax returns, and making false representations to another bankruptcy court. *Martin*, 213 B.R. at 572. In upholding the Bankruptcy Court's ruling, the District Court said it appeared that the

---

7. "The legislative committee's choice of 'absolute' in regard to Section 706(a) is infelicitous to say the least and has spawned an interpretation of the statute couched in hyperbolic terms very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion." *Marcakis*, 254 B.R. at 79.

8. "The words 'at any time' refer literally to any stage in the progress of a case, not to any conditions which may develop during that progress, especially in an abnormal and abusive case." *Starkey*, 179 B.R. at 692.

9. Virtually all of the cases discussing § 706(a) point out that the underlying legislative policy of permitting debtors to repay their debts is central to the right to convert. *Martin*, 880

F.2d at 859; *Finney v. Smith* (*In re Finney*), 141 B.R. 94, 97 (E.D.Va.1992); *Street v. Lawson* (*In re Street*), 55 B.R. 763, 765 (9th Cir. BAP 1985); *In re Spencer*, 137 B.R. 506, 511 (Bankr.N.D.Okla.1992); *In re Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987); *In re Jennings*, 31 B.R. 378, 380–81 (Bankr.S.D.Ohio 1983).

10. While most of the reported cases deal with the question of conversion from Chapter 7 to Chapter 13, the chapter that is limited to individuals, the principles and rationale are the same in cases where the conversion is requested to Chapter 11. Both Chapter 11 and Chapter 13 are designed to allow debtors to reorganize their financial affairs and pay their creditors, in whole or in part.

debtor "has grossly misused the bankruptcy process and fraudulently misrepresented crucial facts in her bankruptcy petition." The Court found that this "flagrant conduct" amounted to "extreme circumstances" warranting denial of the debtor's motion to convert to Chapter 13. *Martin*, 213 B.R. at 573. The Court of Appeals for the Eighth Circuit affirmed the District Court in a memorandum order, without opinion.[11]

*Martin* appears to express the position of the majority of courts today. Other courts interpreting § 706(a) have likewise found that denial of the right to convert is warranted when "extreme circumstances" are present. "Extreme circumstances" may include abuse of the bankruptcy process, bad faith, or other gross inequity. *See, e.g., Matter of Martin*, 880 F.2d 857 (5th Cir.1989); *In re Spencer*, 137 B.R. 506 (Bankr.N.D.Okla. 1992); *In re Jeffrey*, 176 B.R. 4 (Bankr. D.Mass.1994); *In re Krishnaya*, 263 B.R. 63 (Bankr.S.D.N.Y.2001); *In re Pakuris*, 262 B.R. 330 (Bankr.E.D.Pa.2001); *In re Kelly*, 261 B.R. 785 (Bankr.M.D.Fla.2001); *In re Marcakis*, 254 B.R. 77 (Bankr. E.D.N.Y.2000); *In re Dews*, 243 B.R. 337 (Bankr.S.D.Ohio 1999); and *Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580 (1st Cir. BAP 1999).

Other courts have found that conversion should be denied when there is no purpose to be served by the conversion. For example, denial of conversion is appropriate if it is demonstrably clear that the debtor will not be able to propose a feasible plan and conversion would thus be an "exercise in futility," *In re Lilley*, 29 B.R. 442, 443 (1st Cir. BAP 1983), or if the debtor will not obtain any relief as a result of the order, *In re Safley*, 132 B.R. 397, 399–400 (Bankr.E.D.Ark.1991), *In re Jones*, 111 B.R. 674, 680 (Bankr.E.D.Tenn. 1990).

Conversion may likewise be denied to prevent an abuse of the bankruptcy system. *Pakuris*, 262 B.R. at 338. All courts possess the inherent power to protect their jurisdiction and process from abuse. *In re Higginbotham*, 111 B.R. 955, 961 (Bankr.N.D.Okla.1990). "[C]ourts of equity are empowered (and, in the nature of their jurisdiction, required) to see to it that their process is used in an equitable manner." *Spencer*, 137 B.R. at 511. "[W]hile the right to convert is presumptive and nearly absolute, a bankruptcy court ... still must determine if the conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code." *Krishnaya*, 263 B.R. at 69 (internal quotation marks and citation omitted). In summary, the Court has the authority, in the exercise of its discretion, to deny the Motions to Convert filed in these cases.[12]

Having concluded that the Debtors do not have an absolute right to convert these cases to Chapter 11 and having further concluded that the Court has the discretionary authority to deny their requests to convert, the question then becomes what factors the Court should employ in determining whether the Motions in these cases should be granted or denied.

---

11. In *In re Little*, 253 B.R. 427 (8th Cir. BAP 2000), the Bankruptcy Appellate Panel for the Eighth Circuit did not decide whether the right to convert from Chapter 7 to Chapter 13 is absolute, but did note that the "case authority is divided on this issue." *Little*, 253 B.R. at 429, n. 3.

12. Some of the courts that have denied conversion have relied on the Bankruptcy Court's equitable powers in 11 U.S.C. § 105(a), which authorizes the Court to "issue any order...that is necessary or appropriate to carry out the provisions of this title [Title 11]." 11 U.S.C. § 105(a).

The Court finds considerable assistance in that regard in *In re Pakuris*, 262 B.R. 330 (Bankr.E.D.Pa.2001), and *In re Tardiff*, 145 B.R. 357 (Bankr.D.Me.1992), in which the bankruptcy courts enumerated a number of factors that may be considered in determining whether to allow conversion of a Chapter 7 case to Chapter 13. These factors are equally applicable to the pending Motions to convert the Young and PBS cases to Chapter 11, inasmuch as both Chapter 11 and Chapter 13 are reorganization chapters. Those factors may be synthesized as follows:

(1) Whether the conversion is sought in good faith;

(2) Whether the debtor can propose a confirmable plan;

(3) The impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;

(4) The effect of conversion on the efficient administration of the bankruptcy estate, including the likelihood of reconversion to Chapter 7;

(5) Whether conversion would further abuses of the bankruptcy process and would serve to pervert, rather than implement, congressional policy.

*Pakuris*, 262 B.R. at 335–36; *Tardiff*, 145 B.R. at 360–61.

The Court believes that these enumerated factors provide a good, basic guideline of the factors that should be evaluated in ruling on a motion to convert, and therefore the Court will adopt and utilize them in this instance. Applying those factors to the facts in these cases, it becomes clear that conversion of these cases to Chapter 11 should be denied.

First, the conversion of these cases is not being sought in good faith. The purpose of Chapter 11 is to enable debtors to rehabilitate their businesses, *In re C–TC 9th Ave. P'ship*, 113 F.3d 1304, 1308 (2nd Cir.1997), but Cook, the Debtors' counsel, concedes that all of the assets of the estates will be sold and has acknowledged in open court that the Debtors do not wish to be the debtor-in-possession and would consent to the immediate appointment of a Chapter 11 trustee if the cases were converted. In short, the Debtors do not wish to convert the cases so that they can operate and rehabilitate their businesses. According to Cook, the sole purpose for conversion would be to allow the Debtors to propose a plan, not of reorganization, but of distribution of the assets of the bankruptcy estates. From this, the Court can only conclude that the Debtors wish to propose a plan that would differ from the liquidation provisions and procedures set out in the Bankruptcy Code. Since the Debtors concede that they will not be able to operate their businesses and will not be able to reorganize, there would be no purpose to be served by putting the Debtors in Chapter 11 and therefore any request to convert these Chapter 7 cases to Chapter 11 cannot be proposed in good faith.

Additionally, the Debtors have not exhibited any good faith in these proceedings thus far. They have not performed the duties required of them under 11 U.S.C. § 521, and their counsel has indicated that they will not testify or otherwise cooperate with the Trustees so long as they are threatened with criminal prosecutions for their business activities. Although the Court has conducted numerous hearings in these cases, Young and McConnell have never appeared to testify or offer evidence that would assist the Trustees and the Court in the administration of these cases. It is hard to imagine any debtors who have exhibited less good faith and who are less deserving of favorable consideration. There is no reason to think they would change their stripes if they were allowed to convert to Chapter 11.

Second, the Debtors will not be able to propose a confirmable plan of reorganization, which is, again, the ultimate aim of Chapter 11. As just noted, the Debtors' counsel concedes that the Debtors will not be able to operate and rehabilitate their businesses and that, instead, all of their assets will be liquidated. One of the grounds for denying confirmation of a plan in a Chapter 11 case is that confirmation of the plan is likely to be followed by liquidation (unless liquidation is proposed in the plan). 11 U.S.C. § 1129(a)(11). Under the circumstances, the only feasible plans that could be proposed by the Debtors would be plans for the liquidation of their assets and distribution of the resulting proceeds to their creditors in accordance with the provisions of the Bankruptcy Code. Presuming, for the sake of discussion, that the Debtors would intend to propose a plan of distribution that would differ from the distribution provisions of the Code, it is highly unlikely that such a plan would ever gain the votes necessary for confirmation, particularly in view of the competing interests of the banks, investors, and other creditors in these cases. Conversion should not be permitted where the debtor is demonstrably incapable of proposing a feasible plan, *Lilley*, 29 B.R. at 443, or where it serves no point, *Tardiff*, 145 B.R. at 360.

Third, the prejudice to creditors of allowing the requested conversion would far outweigh the benefits of conversion to the Debtors. In reality, a conversion to Chapter 11 would produce no benefits that the Debtors do not already have, particularly if the sole purpose of conversion is to allow the Debtors to propose a plan of distribution. The Debtors do not have to be in Chapter 11 to have a voice in the distribution of the assets of the estates. If they disagree with the Trustees' proposed Chapter 7 distributions, they may object to them and the Court will hear those objections. On the other hand, a conversion at this stage of the proceedings—even though it is relatively early in the cases—would cause significant detriment to the creditors. According to the Debtors' schedules, there may be as many as 28,000 cattle of various ages and stages of production under the care, custody, and/or ownership of the Debtors. However, the Debtors have apparently sold interests in more than 343,000 cattle, meaning that the Debtors are short some 315,000 cattle. The Court has approved post-petition borrowing by the Trustees of up to $1,275,000 in these cases to enable them to feed and maintain the cattle until the cattle are ready for marketing, and the Court has entered various orders to allow the sale of most of the cattle. A conversion of the cases at this point would upset the orderly liquidation of the cattle (and, perhaps, other assets, such as real property and equipment), and would call into question the continued validity of the orders previously entered by the Court, even if the same trustees were appointed as the Chapter 11 trustees. This could only generate confusion and uncertainty. More importantly, a conversion would almost certainly delay any eventual distributions to creditors. Additionally, as the U.S. Trustee points out, conversion would greatly increase the costs of administration because substantial costs would be incurred for creditors' committees and the U.S. Trustee's statutory fees in Chapter 11 cases. The funds for these added expenses would, in the end, come out of the pockets of the creditors, who, it appears, already stand to lose millions of dollars in these cases.

Fourth, conversion would unnecessarily complicate and hinder the administration of these estates, for many of the reasons just stated. It would cast doubt over the continued effectiveness of many of the orders previously entered by the Court. It

would add layers of administrative procedures and costs. It would delay final administration of the estates because of the necessity of balloting and conducting hearings on plans that would have little likelihood of gaining approval over creditors' objections. In addition, the administration of all five of these related cases would be further complicated by conversion because the Rio Baca and Rio Timba cases have recently been converted from Chapter 11 to Chapter 7 and are being administered as Chapter 7 cases. It would unnecessarily complicate these proceedings and confuse the creditors to now convert the Young and PBS cases to Chapter 11, particularly when they have no legitimate prospects for reorganization. Moreover, it is likely that a conversion to Chapter 11 would be followed by an immediate reconversion to Chapter 7, inasmuch as the U.S. Trustee has already filed an anticipatory motion for reconversion and there are grounds for reconversion. One of the grounds for conversion or dismissal of a Chapter 11 case is the inability of a debtor to effectuate a plan (usually, of reorganization), 11 U.S.C. § 1112(b)(2), and another is continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, 11 U.S.C. § 1112(b)(1). In these cases, the Debtors have conceded that they will not be able to reorganize, and thus the grounds already

exist for reconversion. Granting the Debtors' Motions would clearly be an exercise in futility. *Safley,* 132 B.R. at 400.[13]

Lastly, granting the Debtors' Motions to Convert would further abuses of the bankruptcy system and would pervert congressional policy as contained in the Bankruptcy Code. The Debtors in these cases have admitted that the FBI is conducting an investigation into their activities. Young and McConnell, the principals in the PBS case, and Young as an individual debtor have refused to sign verified schedules and statements of affairs in these cases for fear they will incriminate themselves, and counsel has advised the Court and creditors that Young and McConnell will refuse to testify at any § 341 meetings. While Young and McConnell have apparently not interfered with the Trustees in the copying and organizing of the Debtors' records, they have been unable—if not unwilling—to assist the Trustees in obtaining those records and making them available to interested parties.[14] Young and McConnell have not assisted the Trustees in the administration of the estates, and the statements of the Debtors' counsel clearly indicate that Young and McConnell do not intend to assist the Trustees so long as possible criminal charges are hanging over their heads.[15] It is abundantly clear that

---

**13.** There are cases suggesting that a case may be converted to a reorganization chapter as a matter "of right," and then instantaneously "reconverted" to Chapter 7. *See, e.g., Finney v. Smith (In re Finney),* 141 B.R. at 97, *aff'd and remanded,* 992 F.2d 43 (4th Cir.1993)(remanded for hearing on "objective futility" of a Chapter 11 reorganization); *Latin Investment Corp.,* 125 B.R. at 328. As the Court in *Tardiff* observes: "Such an exercise is pointless and exalts form over substance. Circumstances which justify reconversion are adequate to deny conversion in the first place." *Tardiff,* 145 B.R. at 360, n. 14.

**14.** The Trustees and creditors have represented to the Court that there are more than 200,000 pages of paper records and an unspecified amount of computer records in the PBS offices. A single copy of those records has been made at a purported cost of approximately $276,000.00, and the Court has previously entered an Order establishing procedures for the deposit of those records with a records depository and for equal access by all parties to those records.

**15.** Cook stated at the hearing on October 26 that Young and McConnell had been hopeful that they would have any possible criminal actions against them resolved by this time.

Young and McConnell cannot carry out the duties of debtors as required under 11 U.S.C. § 521 and other provisions of the Code.

Furthermore, Krigel, the Trustee in the PBS case, has testified that she has discovered that the Debtors have concealed assets and that corporate assets may have been improperly used to pay the fees of a criminal defense attorney for McConnell. Krigel's testimony further suggests that other assets may have been improperly transferred or diverted immediately prior to the filing of the involuntary petitions. Therefore, it appears that Young and McConnell have concealed assets from the Trustees and may have engaged in improper transfers of assets.

 It should also be kept in mind that Young and McConnell abruptly and apparently without warning ceased their business operations on August 10, 2001, and notified U.S. Bank, their principal creditor, that the bank should make arrangements to take care of the thousands of cattle owned by or under the care and custody of the Debtors and/or other affiliated entities. They have exhibited a blatant disregard for the preservation of the assets of their businesses and the assets of others. In light of these abuses, it would be a slap in the face of the creditors and investors and a perversion of the purposes of the Bankruptcy Code[16] to afford Young and McConnell an opportunity to now become involved in the administration of these estates and allow them to offer a plan of reorganization or liquidation.

In summary, it would make a mockery of the Bankruptcy Code to allow these Debtors to convert these cases to Chapter 11. There are "extreme circumstances" in these cases that warrant denial of the Motions to Convert. The Debtors—acting through Young and McConnell—are responsible for creating the exigent circumstances in these cases. They abandoned thousands of cattle and effectively placed them in the hands of their bankers for care and feeding. They have refused to cooperate with the Trustees and have declined to provide testimony that is needed for the efficient administration of these estates, apparently because of their fears that what they say might incriminate them in criminal proceedings. They have refused to sign bankruptcy schedules under penalty of perjury. It appears that estate assets may have been improperly concealed or transferred, including a transfer of $100,000 to McConnell's criminal defense attorney. Because of the Debtors' noncompliance and failure to perform their required statutory duties, the Trustees, the creditors, and the Court have been compelled to develop complicated procedural orders to provide access to the Debtors' voluminous records. The Trustees have been compelled to borrow in excess of a million dollars simply to feed and care for the abandoned cattle until they are ready for market. Granting these motions would only further complicate these cases and foster confusion among the creditors and other interested parties. Moreover, granting the motions would be an act in futility because grounds exist for immediate reconversion to Chapter 7. No one will benefit by having these motions granted only to be undone by the next motion.

 The Court will readily acknowledge that the Court's power to deny conversion in any case should be exercised

---

Cook stated that proffers had been made to the United States Attorney's office but that those proffers had not yet been accepted by the Government.

16. The purpose of Chapter 7 is to enable honest debtors to get a "fresh start," *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

sparingly. *Krishnaya*, 263 B.R. at 69. At the same time, the courts possess inherent power to protect their jurisdiction and process from abuse, *Spencer*, 137 B.R. at 511, and it is the duty of the Bankruptcy Court "to use its sound discretion to prevent the debtor from choosing chapters in violation of public policy and in disregard of the legitimate interests of creditors." *Starkey*, 179 B.R. at 693–94. The courts must exercise this discretion and power when the circumstances warrant it. This is one of those cases.

## ORDER

Therefore, for the reasons stated hereinabove, the Motions to Convert filed in these cases by George L. Young and Professional Business Services, Inc., are hereby DENIED.