**IN RE: Jason Scott BROWN, Debtor,**

**BANKRUPTCY NO. 13–11913–MM7**

United States Bankruptcy Court,
S.D. California.

DATE: January 21, 2016, TIME:
10:00 a.m., CRTRM: 1

Signed March 18, 2016

848

Christopher R. Bush, Michael G. Doan, Doan Law Firm, Oceanside, CA, for Debtor.

MEMORANDUM DECISION AND ORDER DENYING MOTION TO RECONSIDER DENYING REQUEST FOR DISMISSAL OF CASE FILED BY DEBTOR

MARGARET M. MANN, JUDGE,
United States Bankruptcy Court

Before the court is the second motion for reconsideration of the court's July 25, 2014 order ("Conversion Order") converting this case to one under Chapter 7 despite the request of Debtor Jason Scott Brown ("Brown") that the court dismiss his case instead. The court denied Brown's first motion for reconsideration of the Conversion Order on September 23, 2014. The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") then affirmed both the Conversion Order and the court's denial of Brown's first motion for reconsideration on October 26, 2015. After failing to timely appeal the BAP's decision to the Ninth Circuit, Brown brought this second

motion to reconsider the Conversion Order under Fed.R.Civ.P. 60(b)(5), 60(b)(6), and 60(d), made applicable by Fed. R. Bankr. P. 9024.

■ While this motion could be disposed of on procedural grounds, it raises an important issue which no court in the Ninth Circuit has addressed. That is, whether *Law v. Siegel,* —— U.S. ——, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014), requires that any apparent conflict between 11 U.S.C. § 1307(b) (providing debtors an un-waivable right to dismiss a Chapter 13 case) [1] and § 1307(c) (requiring bankruptcy courts to choose between dismissal and conversion of case based upon the best interests of creditors) be resolved in a manner different than the Ninth Circuit's holding in *Rosson v. Fitzgerald (In re Rosson),* 545 F.3d 764, 767 (9th Cir. 2008). *Rosson* held that *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), provided bankruptcy courts the authority to convert a Chapter 13 case for bad faith under § 1307(c) despite the mandatory dismissal language in § 1307(b). *Rosson,* 545 F.3d at 767.

Even if this court has the authority to question *Rosson,* which it surely lacks, the court finds that *Rosson'*s analysis of *Marrama* was, if anything, corroborated by the later authority of *Law,* 134 S.Ct. at 1194. Because courts in other circuits have reached a different conclusion about the apparent statutory conflict, the court writes this memorandum decision to explain its reasons for denying Brown's second request for reconsideration of the Conversion Order. The court also denies Brown's request to certify this matter for direct appeal to the Ninth Circuit on procedural grounds.

1. All statutory references are to Title 11 of the United States Code unless otherwise stated.

## I. BACKGROUND

Brown filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 13, 2013. On May 20, 2014, Chapter 13 Trustee Thomas H. Billingslea ("Trustee") filed a status report noting that Brown was the sole beneficiary of his father's estate because his siblings assigned their interest to him. Brown then asserted a contrary position, claiming his three brothers were entitled to "receive their fair share" of the probate estate despite the assignments.

To protect the potential for increased recovery to creditors, Trustee requested the court refrain from granting any request for voluntary dismissal without a hearing to consider conversion. Trustee later filed an amended objection to Brown's Chapter 13 plan and sought conversion to Chapter 7 for cause, arguing that Brown's failure to disclose his inheritance was an abuse of the bankruptcy system under *Rosson,* 545 F.3d at 767. When Trustee became concerned that the liquid assets of the estate would diminish while the case remained in Chapter 13, he filed an amended status report on June 26, 2014, requesting Brown deposit remaining funds from his inheritance in his counsel's client trust account, provide a declaration concerning transfers to his brothers, and provide bank statements and cancelled checks. At that time, Trustee requested immediate conversion to Chapter 7 if Brown failed to deposit $37,569 into his counsel's client trust account by July 8, 2014.

At the later hearing, Brown's counsel represented to the court that he had been unable to provide an accounting since several of the transfers to his brothers were in cash. After the court orally granted Trustee's motion to convert the case to Chapter 7 for cause, but before the Conversion Order was entered, Brown's counsel requested Brown's case be dismissed under § 1307(b) rather than converted under § 1307(c).

The Conversion Order found cause existed to convert Brown's case under § 1307(c) because: (1) Brown's proposed plan provided a 0% dividend to general unsecured creditors; (2) Brown provided no evidence indicating that a modified plan was feasible; (3) Brown ignored the entered Pre–Confirmation Modification requiring Brown to turnover $3,224 within 45 days; (4) Brown did not correct his inaccurate schedules regarding his inheritance; and (5) Brown intentionally spent money of the estate when he transferred funds to his relatives. The court also concluded conversion to Chapter 7 was in the best interest of creditors.

Brown promptly appealed the court's Conversion Order to the BAP and filed his first Motion to Reconsider on August 11, 2014. In denying reconsideration of the Conversion Order, the court reiterated its findings that conversion was appropriate under § 1307(c)(4) because Brown acted in bad faith and because conversion was in the best interests of creditors. The court noted that the facts of this Case were similar to those in *Rosson,* 545 F.3d at 767, and *Marrama,* 549 U.S. at 368–69, 127 S.Ct. 1105, and made additional bad faith findings addressing the factors set forth in *Drummond v. Welsh (In re Welsh),* 711 F.3d 1120, 1129 (9th Cir.2013).

The BAP affirmed the Conversion Order, holding that there was no error in the court's findings of cause to convert Brown's Case under §§ 1307(c)(1), (c)(4), and (c)(5) for bad faith, nor in its findings that conversion was in the best interests of unsecured creditors because there was no other "avenue for prompt payment if Debtor's case was dismissed." *Brown v. Billingslea (In re Brown),* No. SC–14–1388–JUKLPA, 2015 WL 6470940, at *11, 2015

Bankr.LEXIS 3625, at *31 (9th Cir. BAP Oct. 26, 2015). Finally, relying on *Rosson*, 545 F.3d at 774, but without citing *Law*, 134 S.Ct. at 1194, the BAP rejected Brown's current argument that he had an absolute right to dismiss his case, stating:

> To the extent debtor argues that he has an absolute right to dismiss his case under § 1307(b) he is mistaken. The Ninth Circuit in *Rosson* held that a Chapter 13 debtor's right of voluntary dismissal under § 1307(b) was not absolute, but was qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad faith conduct or "to prevent an abuse of process." 545 F.3d at 774 (citing § 105(a)).

*Id.*

After the BAP mandate became final, Brown failed to successfully appeal to the Ninth Circuit. Having lost an opportunity to seek appellate relief, Brown returned to this court, claiming that the court must reconsider the Conversion Order because, despite the court's bad faith findings, Brown's right to dismiss his case was absolute under *Law*, 134 S.Ct. at 1194, which changed prior precedent.

Both Trustee and Brown's Chapter 7 Trustee, Christopher Barclay, oppose Brown's second reconsideration motion. They assert the law has not changed and any prospective effect of the Conversion Order is not inequitable. Brown's reply elaborates on his grounds for relief and argues that a "grave miscarriage of justice" would result if he is not allowed to dismiss his case because it resulted in him and his three brothers being sued for $50,000 by the Chapter 7 Trustee.

## II. *ANALYSIS*

### A. Court's Role in Considering Whether Controlling Precedent is Overruled

■ This court's role in considering whether binding Ninth Circuit authority has been overruled by later Supreme Circuit authority is restrictively circumscribed. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc) is clear that, "to preserve the consistency of circuit law," all courts within this Circuit must follow Ninth Circuit authority unless the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *See also Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir.2011) ("A three-judge panel cannot reconsider or overrule circuit precedent unless an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point."). This court must thus follow *Rosson*, 545 F.3d at 774, if it can be reasonably harmonized with the later authority of *Law*, 134 S.Ct. at 1194. This can easily be done.

### B. Impact of *Law* on *Rosson*

*Rosson*, 545 F.3d at 771, specifically noted no conflict between the two subsections of § 1307 at issue here. Under § 1307(b), a bankruptcy court "shall" dismiss a Chapter 13 case on the request of a debtor. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir.1985). But under § 1307(c), a court "may" also convert a Chapter 13 case to Chapter 7 "for cause." As noted in *Rosson*, 545 F.3d at 771, these subsections "can conflict where, on the one hand, a debtor requests voluntary dismissal, while, on the other hand, a party in interest or the trustee moves to convert ... to Chapter 7."

*Rosson*, 545 F.3d at 767, relied upon *Marrama*, 549 U.S. at 365, 127 S.Ct. 1105, to hold that "the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a

bankruptcy court to deny dismissal on grounds of bad-faith conduct or 'to prevent an abuse of process.'" *Rosson*, 545 F.3d at 773–74. *Marrama* involved a debtor who sought to avoid problems in his Chapter 7 case by converting to a Chapter 13 case. *See* 549 U.S. at 368–70, 127 S.Ct. 1105. The Court instead dismissed the debtor's case in the best interests of creditors. *Id.* at 371, 127 S.Ct. 1105. Brown is also a debtor who has acted in bad faith and is seeking to avoid the scrutiny of the Chapter 7 trustee, although this time through the avenue of dismissal instead of conversion. This distinction is without a difference, however, since *Rosson*, 545 F.3d at 774, noted that *Marrama*, 549 U.S. at 368, 127 S.Ct. 1105, left no basis for any analytical distinction between a debtor's dismissal rights in Chapter 13 under § 1307(b) and conversion rights in Chapter 7 cases under § 706(a). The foundation of the analysis of *Rosson*, 545 F.3d at 773, was its interpretation of the statute, although it also secondarily relied on the bankruptcy court's general equitable powers found in § 105.

After *Rosson* came *Law*, 134 S.Ct. at 1194–95, in which the Supreme Court held that a trustee could not surcharge a debtor's exemption under the general equitable powers found in § 105 because use of those powers would contravene § 522(k), which mandates that exempt property "is not liable for payment of . . . any administrative expense." *Id.* at 1198 (quoting §§ 522(c), (k)). If § 105 were the sole justification for the *Rosson* decision, Brown's argument would have more heft. But it wasn't. The first, and more determinative ground was *Rosson*'s conclusion that *Marrama* required §§ 1307(b) and 706(a) be interpreted in a similar matter. Although both statutes use the word "shall" when stating the bankruptcy court's obligations to follow the debtor's request to convert the case in a Chapter 7 and the debtor's request to dismiss the case in a Chapter 13, *Rosson*, 545 F.3d at 773, held that the bankruptcy court could override that request where the statutory scheme authorizes it to order a different resolution of the case. As applied here, Brown did not have an absolute right of dismissal under § 1307(b) because cause was found for conversion as permitted by § 1307(c). *See also In re Armstrong*, 408 B.R. 559, 570 (Bankr.E.D.N.Y.2009) ("[U]nder the Supreme Court's holding in *Marrama*, subsections (b) and (c) should be read *in para materia* and bankruptcy courts should retain the ability to grant relief under subsection (c) in appropriate circumstances despite a Chapter 13 debtor's wish to exit the bankruptcy forum."); *Viegelahn v. Garcia (In re Garcia)*, 535 B.R. 721, 725 (Bankr.W.D.Tex.2015) (citing *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647 (5th Cir.2010)) (the Fifth Circuit's exception to a debtor's absolute right to dismiss under § 1307(b) applies only where the request for dismissal is in direct response to a motion to convert and the debtor has acted in bad faith); *In re Smith*, 530 B.R. 327, 348–49 (Bankr. S.D.Miss.2015) (also following *Jacobsen* after *Law* to conclude debtor's bad faith justified denying her request to dismiss under § 1307(b) when a motion to convert was pending).

Rather than undercutting *Rosson*'s analysis, *Law* actually confirms it. In *Law*, the Supreme Court emphasized that *Marrama*'s rejection of debtors' absolute right to dismiss their cases was not solely based upon § 105. *Law*, 134 S.Ct. at 1197. In fact, the Supreme Court, in *Law*, referred to *Marrama*'s statements that a court's refusal to convert a case may be authorized under § 105(a), as mere "dictum." *Id.* Instead, the Supreme Court explained that *Marrama*'s holding was based upon a

statutory analysis of §§ 1307(b) and 706(a):

> The question [in *Marrama*] was whether a debtor's bad-faith conduct was a valid basis for a bankruptcy court to refuse to convert the debtor's bankruptcy from a liquidation under Chapter 7 to a reorganization under Chapter 13. Although § 706(a) of the Code gave the debtor a right to convert the case, § 706(d) "expressly conditioned" that right on the debtor's "ability to qualify as a 'debtor' under Chapter 13." And § 1307(c) provided that a proceeding under Chapter 13 could be dismissed or converted to a Chapter 7 proceeding "for cause," which the court interpreted to authorize dismissal or conversion for bad-faith conduct. In light of § 1307(c), the court held that the debtor's bad faith could stop him from qualifying as a debtor under Chapter 13, thus preventing him from satisfying § 706(d)'s express condition on conversion.

*Law,* 134 S.Ct. at 1197 (citations omitted). The Supreme Court interpreted the interplay between §§ 706(a), 706(d), and 1307(c) in a holistic manner, as its other cases dictate. *Bullock v. BankChampaign, N.A.,* — U.S. ——, 133 S.Ct. 1754, 1760, 185 L.Ed.2d 922 (2013) (citing *Babbitt v. Sweet Home Chapter Cmtys. for Great Or.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)) (noting "a reluctance to treat statutory terms as surplusage").

*Law* clarified the reasoning of *Marrama* was that "if the case had been converted to Chapter 13, § 1307(c) would have required it to be either dismissed or reconverted to Chapter 7 in light of the debtor's bad faith." *Law,* 134 S.Ct. at 1197. The limited utility of § 105 was to authorize a bankruptcy court to deny debtors their right to convert a Chapter 7 case to Chapter 13, where the debtors would not be qualified debtors under § 706(d). *Law,* 134 S.Ct. at 1197. Hence, § 105 could be used to avoid the "futile procedural niceties in order to reach more expeditiously an end result required by the Code." *Law,* 134 S.Ct. at 1197.

The "procedural nicety" in *Marrama* was that there was no § 1307(c) motion pending in that case since it had not yet been converted to Chapter 13 when the bankruptcy court dismissed the case. *Id.* The procedural nicety in this case was that even though this court had ruled the case should be converted, no final order had been entered. The finality of a dismissal order was considered required in this circuit before *Rosson* was decided. *See Beatty v. Traub (In re Beatty),* 162 B.R. 853, 857 (9th Cir. BAP 1994) (conversion was not sufficiently effective upon the oral ruling but had to await the date of entry into the docket), *overruled by Rosson,* 545 F.3d at 773. Had the order converting Brown's case under § 1307(c) become final before he moved to dismiss his case, Brown would have lost his right to dismissal under § 1307(b) because a debtor's right to dismiss a Chapter 7 case is conditional under § 706(a), which only permits a one-time conditional right to convert to another chapter under § 706(d). *Marrama,* 549 U.S. at 372, 127 S.Ct. 1105.

Brown relies upon three bankruptcy court decisions outside the Ninth Circuit which found that *Rosson* was overruled by *Law*: *Ross v. AmeriChoice Fed. Credit Union,* 530 B.R. 277, 288 (E.D.Pa.2015) (the plain language of § 1307(b) provides debtors an absolute right to dismiss); *In re Mills,* 539 B.R. 879, 887 (Bankr.D.Kan. 2015) (same); *In re Fisher,* No. 14–61076, 2015 WL 1263354, at *3, 2015 Bankr.LEXIS 875, at *18 (Bankr.W.D.Va. Mar. 19, 2015) (same). Each of these cases focused primarily on the difference between bankruptcy judges' apparent obligation to dismiss a case upon request in § 1307(b) as a

result of the statutory language "shall," and bankruptcy judges' authority to convert a case for cause under § 1307(c), which uses the word "may." *Ross,* 530 B.R. at 288; *Mills,* 539 B.R. at 887; *Fisher,* 2015 WL 1263354, at *3, 2015 Bankr.LEXIS 875, at *18. The use of these different verbs as compulsion to honor a debtor's desired outcome of a bankruptcy case, even when cause exists for a different outcome consistent with the interests of creditors, was rejected in *Rosson,* 545 F.3d 773, as inconsistent with *Marrama,* 549 U.S. at 372, 127 S.Ct. 1105.

Not only is this court compelled to follow *Rosson,* the court also rejects the reasoning of the cases cited by Brown for three reasons. First, these cases treat the bankruptcy court's ability under § 1307(c) to convert a case as a subordinate part of the statute subject to being overridden by § 1307(b) upon a debtor's request. A more holistic read of these subsections is to give each equal importance in the situations where each is applicable. Section 1307(b) permits debtors who have acted in good faith to dismiss their cases in their own interest. However, under § 1307(c), where bad faith is present, the court decides how the case is to proceed, if at all, in the interests of the creditors rather than of the debtor. This interpretation focuses on the separate functions of these subsections, and each part of the statute is given equal significance as is required. *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. . . .").

Second, these cases put more weight on the difference between "shall" and "may" than is appropriate since the courts must consider the statute as a whole. In *Law,* 134 S.Ct. at 1195, the Court looked to the entirety of the statute to interpret § 522(b), and for this reason rejected the trustee's argument that because a debtor "may exempt" an asset, the court was free to surcharge it, stating:

> But the subject of "may exempt" in § 522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion. A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.

*Law,* 134 S.Ct. at 1196. Here, bankruptcy courts have a valid statutory reason to refuse debtors' request to dismiss their Chapter 13 case where cause exists.

 Third, interpreting § 1307(c) in a way that prevents debtors from acting in bad faith to shield more of their assets for themselves at the expense of their creditors furthers the purposes of the Bankruptcy Code. As explained in *Marrama,* the Bankruptcy Code should be interpreted in a manner consistent with "the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." 549 U.S. at 374–75, 127 S.Ct. 1105.

For all these reasons, this court finds *Law,* 134 S.Ct. at 1197, should be seen as supporting rather than overruling *Rosson,* 545 F.3d at 773–74.

### C. Grounds for Reconsideration

The court finds Brown's procedural bases for his reconsideration motion to be similarly lacking in merit. Brown relies upon three subsections of Rule 60 for these grounds which provide in pertinent part:

(b) Grounds for Relief from a Final Judgment, Order or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:

. . .

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

. . .

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

## A. Rule 60(b)(5)

■ The first part of Rule 60(b) that Brown relies upon is Rule 60(b)(5). A motion brought under Rule 60(b)(5) cannot be granted, however, without "a significant change either in factual conditions or in law." *Agostini v. Felton,* 521 U.S. 203, 215–16, 117 S.Ct. 1997, 138 L.Ed.2d 391 1997. Brown seeks Rule 60(b)(5) relief claiming the prospective application of the Conversion Order is no longer equitable due to a change in legal authority. Neither changed circumstances not inequity have been shown here, however.

Not only is the analysis of *Law,* 134 S.Ct. at 1188, consistent with the Conversion Order as discussed above, the sequence of events here establishes that *Law* was decided before, not after, the Conver-

sion Order was entered. *Law* was argued on January 13, 2014, and decided on March 4, 2014. Trustee filed his Amended Objection in which he requested conversion under *Rosson,* 545 F.3d at 767, almost three months after *Law* was decided, on May 30, 2014. The court then held its hearing on Trustee's Motion on July 8, 2014, over four months after *Law* was decided. The Conversion Order was entered soon thereafter on July 25, 2014. Because *Law* was the controlling law the entire time the conversion issue was pending, Brown cannot establish a change in the law. Thus, he is improperly challenging "the legal conclusions on which a prior judgment or order rests." *Horne v. Flores,* 557 U.S. 433, 447, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (Rule 60(b)(5) relief not available to challenge legal grounds of an earlier order).

### 1. *Prospective Effect*

■ Rule 60(b)(5) applies only to orders with prospective application. *Harvest v. Castro,* 531 F.3d 737, 748 (9th Cir. 2008). An order has a prospective application where "it is executory or involves the supervision of changing conduct or conditions." *Id.* (citing *Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995)). Upon conversion, Brown was required to file statements and schedules and satisfy other Chapter 7 obligations in accordance with Fed. R. Bankr.P. 1019(4) and 1007(c). Brown's continuing obligations under these rules are supervised by the court, and render the conversion aspect of the Conversion Order prospective.

The prospective application of the other aspect of the Conversion Order, denying Brown's dismissal request, is disputed by Trustee. He argues that this aspect is not prospective because it was not conditional and anticipated no changing circumstances, distinguishing this case from *Safe Flight Instrument Corp. v. United Control*

*Corp.,* 576 F.2d 1340, 1344 (9th Cir.1978) (injunction against patent infringement conditioned upon the invalidity of the patent was vacated after all of the patents were later found to be valid). Standing alone, a dismissal order is arguably not prospective because it is neither "executory" nor does it "involve the supervision of changing conduct or conditions." *Harvest,* 531 F.3d at 748. Denial of dismissal under § 1307(b), however, is intrinsically tied to a conversion under § 1307(c) because these outcomes were alternative courses of action then, and remain so now. This court's denial of Brown's request to dismiss is prospective in this regard. Similarly, while *Safe Flight* awarded damages as well as an injunction, (and the damages were by nature not an award of prospective relief) that aspect of its order did not affect the Ninth Circuit's treatment of the remainder of the order as prospective. *See Safe Flight,* 576 F.2d at 1344.

For these reasons, this court finds that the Conversion Order, with its necessary denial of dismissal, is prospective.

### 2. *Public Interest*

 Even if Brown could persuasively claim a change in circumstances, Rule 60(b)(5) relief would not be in the public interest. Rule 60(b)(5) requires that continued enforcement of the order be "detrimental to the public interest" before relief can be granted. *Flores v. Huppenthal,* 789 F.3d 994, 1001 (9th Cir.2015). The equitable considerations applicable to Rule 60(b)(5) cannot merely involve private interests. *See W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.,* 977 F.2d 558, 562–63 (Fed. Cir.1992) ("[C]ommercial decrees affect only the parties to the particular suit"). This is because the public's interest in the finality of judgments and the sanctity of bargains outweighs considerable injury in determining whether changed circum-

stances warrant relief in purely private litigation. *Id.*

 The public interest involved in conversion issues was noted in *Marrama,* 549 U.S. at 374, 127 S.Ct. 1105: To afford bankruptcy relief only to honest but unfortunate debtors and to prevent debtors from abusing the bankruptcy system. *See also In re Young,* 269 B.R. 816, 829 (Bankr.W.D.Mo.2001) (public policy favors allowing courts to protect their jurisdiction and process from abuse). Brown is not an honest but unfortunate debtor, but an abuser of the bankruptcy system, and reconsidering the Conversion Order does nothing to advance the public interest. While Brown may have a private interest in keeping his inheritance rather than paying it to his creditors, that is an insufficient reason to award Rule 60(b)(5) relief. *Gore,* 977 F.2d at 562–63.

### B. *Rule 60(b)(6)*

 Brown's second basis for relief is Fed.R.Civ.P. 60(b)(6), which allows courts to grant relief from a final order "for any other reason that justifies relief." While Rule 60(b)(6) should be "liberally applied ... to accomplish justice," the rule "should be used sparingly as an equitable remedy to prevent manifest injustice." A court grants relief from an order under Rule 60(b)(6) only in "extraordinary circumstances." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir.2007) (citations omitted); *see also Gonzalez v. Crosby,* 545 U.S. 524, 536, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) ("a subsequent change in law" does not constitute extraordinary circumstances justifying relief). Other factors must exist which make the change in the law "extraordinary," for relief under Rule 60(b)(6) to be appropriate, *Ritter v. Smith,* 811 F.2d 1398, 1401–04 (11th Cir.1987),

such as where the moving party can demonstrate "injury and circumstance beyond [their] control." *See also Zurich,* 503 F.3d at 941.

■ The only extraordinary circumstance advanced by Brown is his claim that *Law,* 134 S.Ct. at 1197–98, is a dramatic change in decisional law and should have been considered by the court. Not only did the law remain constant, it was within Brown's control to point to *Law* when conversion was first raised. Unlike the order in *Ritter,* 811 F.2d at 1402, where "there was only minimal delay between the finality of the judgment and the motion for Rule 60(b)(6) relief," here, the Conversion Order has been fully executed and eighteen months of work by the Chapter 7 trustee and counsel cannot be undone. Rule 60(b)(6) relief is therefore not available to Brown in absence of proper extraordinary circumstances.

## C. *Rule 60(d)*

■ The final basis for Rule 60 relief argued by Brown is under Rule 60(d), which does not limit a court's power to entertain an independent action to relieve a party from an order. Rule 60(d) does not create a new right of action but merely preserves the existence of a "procedural remedy ... by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action." Fed.R.Civ.P. 60(b) advisory committee's note to 1946 amendment. The typical grounds justifying an independent action in equity is fraud, but can include accident or mistake resulting in a "grave miscarriage of justice." *United States v. Beggerly,* 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). As noted above, there was no grave miscarriage of justice and no mistake, so relief is unavailable to Brown under Rule 60(d) either.

## III. *Certification under 28 U.S.C. § 158(d)(2)*

Brown attempts to circumvent his failure to timely appeal by also moving this court to certify an order for direct appeal to the Ninth Circuit. This aspect of the Motion is procedurally flawed and must be denied.

The court is required to certify an appeal pursuant to 28 U.S.C. § 158(d)(2)(B)(i) "on the request of a party" when the matter involves: (i) Questions of law as to which there is no controlling decision of the court of appeals or Supreme Court or is of public importance; or (ii) Questions of law requiring resolution of conflicting decisions; or (iii) Orders from which an immediate appeal may "materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A). Brown failed to meet the procedural requirements which must be satisfied before the court can certify a direct appeal, however.

Fed. R. Bankr.P. 8006(a) (formerly Fed. R. Bankr.P. 8001(f)) requires a bankruptcy court's order for direct appeal becomes effective when: (i)The requesting party files for certification, (ii) the requesting party timely appeals under Rule 8004, and (iii) the notice of appeal becomes effective under Rule 8002. *See also* Fed. R. Bankr.P. 8006 advisory committee's note to 2014 amendment (8006(a) requires a proper appeal before a certification for direct review becomes effective); *Weaver v. Harmon,* 542 F.3d 257, 258 n. 1 (1st Cir.2008) (direct appeal from bankruptcy court denied under former Rule 8001 because "the certification itself cannot serve as notice of an appeal"). The notice of appeal becomes effective under Rule 8002 "when it is filed with the bankruptcy

court." Fed. R. Bankr.P. 8006 advisory committee's note to 2014 amendment.

■ Brown failed to specify which order he seeks certification for appeal: The Conversion Order, or the order resolving this motion. Ultimately it does not matter. Brown failed to timely appeal the Conversion Order to the Ninth Circuit, so that order cannot be certified for appeal. The court has not yet entered an order on this Motion, so certification for direct appeal is premature. The request for certification is therefore denied.

## IV. *Conclusion*

The Supreme Court in *Law,* 134 S.Ct. at 1194, took pains to emphasize the continuing vitality of *Marrama,* 549 U.S. at 367, 127 S.Ct. 1105, with a specific reference to the function of § 1307(c) in prohibiting debtors from benefiting from bad faith conduct, even though it was a Chapter 7 bankruptcy case where § 1307(c) was not directly applicable. This express emphasis in *Law,* 134 S.Ct. at 1194, on the importance of § 1307(c) in preventing abuse of the bankruptcy system, is certainly as important in Chapter 13 cases as it is in Chapter 7 cases.

Procedurally as well, Brown does not qualify for relief from an order several years after it was entered and later affirmed on appeal. Such relief requires extraordinary circumstances which are absent here. The Conversion Order will not be reconsidered.

IT IS SO ORDERED.